### In re MAURY.

(Circuit Court of Appeals, Ninth Circuit. May 5, 1913.)

No. 2,205.

1. CONTEMPT (§ 34*)—JURISDICTION TO PUNISH—FEDERAL COURTS.

Under Rev. St. § 725 (U. S. Comp. St. 1901, p. 583), providing that federal courts may punish contempts by fine or imprisonment in the discretion of the court, provided that such power shall not extend to any cases except the misbehavior of any person in their presence, or so near as to obstruct the administration of justice, the misbehavior of any of the officers of the courts in their official transactions, or disobedience or resistance to process, the federal District Court had jurisdiction to summarily punish an attorney for contempt in making contemptuous statements to a jury in the trial of an action before such court.

[Ed. Note.—For other cases, see Contempt, Cent. Dig. §§ 99, 101–104; Dec. Dig. § 34.*]

2. CONTEMPT (§ 14*)—ATTORNEYS—ADDRESS TO JURY—DISRESPECT.

Respondent, acting as attorney for plaintiff on trial of an action in a district court, while the jury was being impaneled, stated, "I cannot win this case in S. county, so my questioning will be very particular." In opening his case to the jury he stated: "Lawyers usually close their

statements of this kind that they expect a verdict at the hands of the jury. I do not expect more than a hung jury here against the defendant. If this case were in Dillon, Helena, Billings, Missoula, I would"— whereupon he was stopped by the court and reprimanded. *Held*, that such statements were disrespectful to the jury and punishable as a contempt.

[Ed. Note.—For other cases, see Contempt, Cent. Dig. §§ 36–41; Dec. Dig. § 14.*

Liability of attorneys, see note to Anderson v. Comptois, 48 C. C. A. 7.]

3. CONTEMPT (§ 52*)—DEFENSE—OPPORTUNITY TO DEFEND.

Where an attorney committed a contempt of court in the trial of a case in making contemptuous statements before the jury in open court, and the court before punishing him for contempt afforded him an opportunity to speak in his own behalf, and he at that time addressed the court at some length, it was not error to assess a punishment for the contempt without the filing of written charges or service of notice of citation and formal trial.

[Ed. Note.—For other cases, see Contempt, Cent. Dig. §§ 140–142; Dec. Dig. § 52.*]

4. CONTEMPT (§ 52*)—TRIAL—TIME.

Where respondent was guilty of contempt in statements made to the jury while they were being impaneled and in his opening statement, the court did not err in waiting until the next day and until the jury had retired before imposing judgment on respondent for contempt.

[Ed. Note.—For other cases, see Contempt, Cent. Dig. §§ 140–142; Dec. Dig. § 52.*]

5. CRIMINAL LAW (§ 1214*)—PUNISHMENT—EXCESSIVENESS.

Where an attorney used contemptuous language to a jury in a trial in a District Court, a judgment that he pay a fine of $500 and be remanded to the custody of the marshal until the fine was paid was not subject to review on appeal as excessive, unusual, and cruel, in the absence of any showing that it was out of proportion to the offense or beyond respondent's ability to pay or secure his discharge from imprisonment by taking the poor debtor's oath.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. §§ 3304–3309; Dec. Dig. § 1214.*]

In Error to the District Court of the United States for the District of Montana; George M. Bourquin, Judge.

In the matter of proceedings to punish H. Lowndes Maury for contempt of court. The defendant was adjudged guilty of contempt and ordered to pay a fine of $500, and he brings error. Affirmed.

The statements adjudged by the lower court to be contemptuous were made by the plaintiff in error while acting as attorney for the plaintiffs in the trial of a case entitled "Myrtle Northam and Hedley Northam, by Myrtle Northam, his next friend, Plaintiffs, v. Boston & Montana Consolidated Copper & Silver Mining Company, a Corporation, Defendant," in the District Court of the United States for the District of Montana. That case was an action to recover damages in the sum of $35,000 alleged to have arisen from injuries to the husband of the plaintiff Myrtle Northam, and the father of the minor plaintiff, Hedley Northam, through negligence of the defendant mining company.

Two separate statements made by the plaintiff in error are alleged as misconduct on his part: First, the following statement (made while the jury was being impaneled): "I cannot win this case in Silver Bow county, so my questioning will be very particular." Second, the following statement (made during the opening statement of the plaintiff in error to the jury): "And if we show you these facts, and if it is shown that Northam could not reasonably

be expected in coming under that rock to know of its condition on that day on which he was killed, then are we entitled to a verdict at your hands, in favor of these plaintiffs and against the defendant? Lawyers usually close their statements of this kind that they expect a verdict at the hands of the jury. I do not expect more than a hung jury here against the defendant. If this case were in Dillon, Helena, Billings, Missoula, I would— " At this point in the statement the plaintiff in error was interrupted by the court, and told that his language was most disrespectful to the jury; that they were officers of the court, and the court would not permit him to continue in any such line of statement; that his duty in his opening statement was to state the facts he expected to prove; that he would not be permitted to go beyond that, and would have to confine himself to that. The trial of the case was then continued. On the afternoon of the next day, after the case had been submitted to the jury and they had retired to deliberate, the plaintiff in error was called before the court, and, after he had been permitted to state why the judgment of the court should not be pronounced against him, was adjudged guilty of contempt of court and ordered to pay a fine of $500.

Lewis P. Forestell and Swan T. Hogevoll, both of San Francisco, Cal., and H. Lowndes Maury, of Butte, Mont., for plaintiff in error.

C. F. Kelley and L. O. Evans, both of Butte, Mont., W. B. Rodgers, of Anaconda, Mont., and D. Gay Stivers, of Butte, Mont., for Boston & Montana Consol. Copper & Silver Mining Co.

Before GILBERT and MORROW, Circuit Judges, and WOLVERTON, District Judge.

MORROW, Circuit Judge (after stating the facts as above). [1] It is alleged by the plaintiff in error that the District Court erred in rendering judgment against him for the reason that that court was without jurisdiction to summarily punish for contempt.

Section 725 of the Revised Statutes (U. S. Comp. St. 1901, p. 583), from which the power of the federal courts in matters of contempt is derived, reads as follows:

"The said courts shall have power to impose and administer all necessary oaths, and to punish, by fine or imprisonment, at the discretion of the court, contempts of their authority: Provided, that such power to punish contempts shall not be construed to extend to any cases except the misbehavior of any person in their presence, or so near thereto as to obstruct the administration of justice, the misbehavior of any of the officers of said courts in their official transactions, and the disobedience or resistance by any such officer, or by any party, juror, witness, or other person, to any lawful writ, process, order, rule, decree, or command of the said courts."

In Ex parte Robinson, 86 U. S. (19 Wall.) 505, 510 (22 L. Ed. 205), Mr. Justice Field, referring to the power of the federal courts to punish for contempt, and construing section 725 of the Revised Statutes, said:

. "The power to punish for contempts is inherent in all courts; its existence is essential to the preservation of order in judicial proceedings, and to the enforcement of the judgments, orders, and writs of the courts, and consequently to the due administration of justice. The moment the courts of the United States were called into existence and invested with jurisdiction over any subject, they became possessed of this power. But the power has been limited and defined by the act of Congress of March 2, 1831. The act, in terms, applies to all courts; whether it can be held to limit the authority of the Supreme Court, which derives its existence and powers from the Constitution, may perhaps be a matter of doubt. But that it applies to the Cir-

cuit and District Courts there can be no question. These courts were created by act of Congress. Their powers and duties depend upon the act calling them into existence, or subsequent acts extending or limiting their jurisdiction. The act of 1831 is, therefore, to them the law specifying the cases in which summary punishment for contempts may be inflicted. It limits the power of these courts in this respect to three classes of cases: (1) Where there has been misbehavior of a person in the presence of the courts, or so near thereto as to obstruct the administration of justice; (2) where there has been misbehavior of any officer of the courts in his official transactions; and (3) where there has been disobedience or resistance by any officer, party, juror, witness, or other person, to any lawful writ, process, order, rule, decree, or command of the courts. As thus seen the power of these courts in the punishments of contempts can only be exercised to insure order and decorum in their presence, to secure faithfulness on the part of their officers in their official transactions, and to enforce obedience to their lawful orders, judgments, and processes."

In Ex parte Terry, 128 U. S. 289, 302, 9 Sup. Ct. 77, 79 (32 L. Ed. 405), the petitioner had been adjudged guilty of contempt by the United States Circuit Court for the Northern District of California. Mr. Justice Harlan, delivering the opinion of the court, said:

"Nor can there be any dispute as to the power of a Circuit Court of the United States to punish contempts of its authority. In United States v. Hudson, 7 Cranch, 32 [3 L. Ed. 259], it was held that the courts of the United States, from the very nature of their institution, possess the power to fine for contempt, imprison for contumacy, enforce the observance of order, etc. In Anderson v. Dunn, 6 Wheat. 204, 227 [5 L. Ed. 242], it was said that 'courts of justice are universally acknowledged to be vested, by their very creation, with power to impose silence, respect, and decorum in their presence, and submission to their lawful mandates.' So, in Ex parte Robinson, 19 Wall, 505, 510 [22 L. Ed. 205]: 'The power to punish for contempts is inherent in all courts; its existence is essential to the preservation of order in judicial proceedings, and to the enforcement of the judgments, orders, and writs of the courts, and consequently to the due administration of justice. The moment the courts of the United States were called into existence and invested with jurisdiction over any subject, they became possessed of this power.' Ex parte Bollman, 4 Cranch. 75, 94 [2 L. Ed. 554]; Story, Constitution, § 1774. * * * But this power, so far as the Circuit Courts of the United States are concerned, is not simply incidental to their general power to exercise judicial functions; it is expressly recognized, and the cases in which it may be exercised are defined, by acts of Congress. They have power, by statute, 'to punish, by fine or imprisonment, at the discretion of the court, contempts of their authority: Provided, that such power to punish contempts shall not be construed to extend to any cases except the misbehavior of any person in their presence, or so near thereto as to obstruct the administration of justice. * * * *' "

[2] But the plaintiff in error insists that the words spoken were not contemptuous under any reasonable construction. With this we cannot agree. In addressing to the jury the abusive and disrespectful language set forth above, the plaintiff in error, in our opinion, committed a grave breach of the duty and obligation of an attorney to maintain the respect due to courts of justice and judicial officers. Had his statements been addressed to the court, the fact that they were contemptuous could not be seriously questioned. And the fact that they were addressed to the jury does not lessen their objectionable character. In jury trials, the jury is part of the court, so far as the attitude of counsel towards it is concerned, and it is entitled to the same

respect, consideration, and protection to which the court itself is entitled.

In the case of Breen, 30 Nev. 164, 176, 93 Pac. 997, 1000, the court said:

"To attempt to declare any fixed rule marking the boundaries where free speech in reference to court proceedings shall end would be as dangerous as it would be difficult. The right of free speech is one of the greatest guaranties to liberty in a free country like this, even though that right is frequently and in many instances outrageously abused. And scarcely less, if not of equal, importance, is the maintenance of respect for judicial tribunals, which are the arbiters of questions involving the lives, liberties, and property of the people. The duty and power is imposed upon the courts to protect their good name against ill-founded and unwarranted attack, the effect of which would be to bring the court unjustly into public contempt and ridicule, and thus impair the respect due to its authority. While it is the duty of all to protect the courts against unwarranted attack, that duty and obligation rests especially upon the members of the bar and other officers of the court. * * * It is the duty of all attorneys to be honest and honorable, to conduct themselves as gentlemen, and to show due respect and courtesy. * * * When they fail in any of these respects it is essential to the proper maintenance of the respect and dignity due to the court, and to the proper administration of justice, that they be brought to a realization of their duties by reprimand, suspension, or disbarment, and sometimes by fine and imprisonment."

In the case before us we think that the statements made by the plaintiff in error were unwarranted reflections upon the honor and integrity of the jury whom he was addressing, and that in making them he was guilty of a grave breach of professional propriety. He had no right to assume that the case in which he was engaged would not receive at the hands of the jurymen the unbiased and unprejudiced consideration and deliberation which it merited. Nor did he have the right to assume that the jury would not return a verdict against the defendant mining company, if in their judgment the facts warranted it.

[3] The plaintiff in error also avers that the court below erred in not giving him an opportunity to defend himself by way of preparing a defense or offering evidence, and that the court had no jurisdiction to punish for contempt without filing written charges or giving notice, or without a citation.

With respect to this contention it must be remembered that at the time the plaintiff in error was called before the court, and before judgment was passed upon him, he was permitted to speak in his own behalf, and that he at that time addressed the court at some length.

In the case of Terry, supra, the petitioner alleged that the Circuit Court was without jurisdiction to make the order committing him to jail for the reasons that it was made without his having had any previous notice of the intention of the court to take any steps whatever in relation to the matters referred to in the order, and that it was made without giving him an opportunity of being first heard in defense of the charges therein made against him. Concerning these allegations, Mr. Justice Harlan said:

"These grounds may be dismissed as immaterial in any inquiry this court is at liberty, upon this original application, to make. For, upon the facts recited in the order of September 3d, showing a clear case of contempt committed in the face of the Circuit Court, which tended to destroy its authority,

and, by violent methods, to embarrass and obstruct its business, the petitioner was not entitled, of absolute right, either to a regular trial of the question of contempt, or to notice by rule of the court's intention to proceed against him, or an opportunity to make formal answer to the charges contained in the order of commitment. It is undoubtedly a general rule in all actions, whether prosecuted by private parties, or by the government—that is, in civil and criminal cases—that 'a sentence of a court pronounced against a party without hearing him, or giving him an opportunity to be heard, is not a judicial determination of his rights, and is not entitled to respect in any other tribunal.' Windsor v. McVeigh, 93 U. S. 274, 277 [23 L. Ed. 914]. But there is another rule, of almost immemorial antiquity, and universally acknowledged, which is equally vital to personal liberty, and to the preservation of organized society, because upon its recognition and enforcement depend the existence and authority of the tribunals established to protect the rights of the citizens, whether of life, liberty, or property, and whether assailed by the illegal acts of the government or by the lawlessness or violence of the individuals. It has relation to the class of contempts which, being committed in the face of the court, imply a purpose to destroy or impair its authority, to obstruct the transaction of its business, or to insult or intimidate those charged with the duty of administering the law. Blackstone thus states the rule: 'If the contempt be committed in the face of the court, the offender may be instantly apprehended and imprisoned, at the discretion of the judge, without any further proof or examination.' * * *

"It results from what has been said that it was competent for the Circuit Court, immediately upon the commission, in its presence, of the contempt recited in the order of September 3d, to proceed upon its own knowledge of the facts, and punish the offender, without further proof, and without issue or trial in any form. It was not bound to hear any explanation of his motives, if it was satisfied, and we must conclusively presume, from the record before us, that it was satisfied, from what occurred under its own eye and within its hearing, that the ends of justice demanded immediate action, and that no explanation could mitigate his offense or disprove the fact that he had committed such contempt of its authority and dignity as deserved instant punishment. Whether the facts justified such punishment was for that court to determine under its solemn responsibility to do justice, and to maintain its own dignity and authority."

[4] We cannot agree with the contention of the plaintiff in error that the court below erred in waiting until the next day before proceeding to pass judgment upon him.

In the case of Terry, supra, the petitioner, after committing the offense, left the courtroom, and at a subsequent time of the same day the Circuit Court made the order adjudging him guilty of contempt of court. Concerning this question the court said:

"The precise question, therefore, to be now determined, is whether the retirement of the petitioner from the courtroom, into another room of the same building, after he had been guilty of misbehavior in the presence of the court, and had violently obstructed the execution of its lawful order, defeated the jurisdiction which it possessed, at the moment the contempt was committed, to order his immediate imprisonment without other proof than that supplied by its actual knowledge and view of the facts, and without examination or trial in any form. In our judgment this question must be answered in the negative. Jurisdiction of the person of the petitioner attached instantly upon the contempt being committed in the presence of the court. That jurisdiction was neither surrendered nor lost by delay on the part of the Circuit Court in exercising its powers to proceed, without notice and proof, and upon its view of what occurred, to immediate punishment. * * *

"It was within the discretion of that court, whose dignity he had insulted, and whose authority he had openly defied, to determine whether it should, upon its own view of what occurred, proceed at once to punish him, or postpone action until he was arrested upon process, brought back into its presence, and permitted to make defense. Any abuse of that discretion would be at

most an irregularity or error, not affecting the jurisdiction of the Circuit Court."

We are of opinion that the rule laid down in the case of Terry is entirely applicable to the case before this court. Obviously there can be no distinction between delaying until later in the same day, and delaying until the next day, before making an order adjudging an offender guilty of contempt of court; jurisdiction of the person of the offender having attached instantly upon the contempt being committed in the presence of the court.

[5] The plaintiff in error contends further that the punishment imposed upon him was excessive, unusual, and cruel. The judgment of the court was that the plaintiff in error "pay a fine of $500 and be remanded into the custody of the United States marshal for the district of Montana until such fine is paid." In the absence of a statute limiting the amount of a fine or the duration of imprisonment, the punishment is within the sound discretion of the court, having in view the ability of the offender to comply with the judgment of the court as to the amount of the fine. The only ground upon which an appellate court can review such a judgment, and hold it to be an abuse of sound discretion, would be a showing that the fine was excessive and out of proportion to the offense, or that it was beyond the ability of the offender to pay the fine or secure his discharge from imprisonment by taking the poor debtor's oath, and that the imprisonment as an alternative would therefore be indefinite. No such showings having been made in this case, there is no ground for setting aside the judgment or for its revision.

The judgment and order of the court below are therefore affirmed.