UNITED STATES of America,
Appellee,

v.

Carmine GALANTE and Anthony Mirra,
Appellants.

No. 75, Docket 27048.

United States Court of Appeals
Second Circuit.

Argued Sept. 28, 1961.

Decided Jan. 8, 1962.

Galante applied for bail pending appeal, which was denied. Galante's sentence was fully served June 3, 1961 and he was then discharged.

The United States moves to dismiss Galante's appeal as moot. The motion must be granted. In the absence of any showing of collateral effects of a judgment of conviction, such as loss of civil rights or potential enhanced punishment under multiple offender statutes, completion of service of a sentence of imprisonment makes an appeal from the judgment moot. "[T]he moral stigma of a judgment which no longer affects legal rights does not present a case or controversy for appellate review." St. Pierre v. United States, 319 U.S. 41, 43, 63 S.Ct. 910, 911, 87 L.Ed. 1199, Pollard v. United States, 352 U.S. 354, 358, 77 S.Ct. 481, 1 L.Ed.2d 393.

A judgment of guilt of criminal contempt is not a felony conviction. United States v. DeSimone, 2 Cir., 267 F.2d 741, cert. denied 361 U.S. 827, 80 S.Ct. 74, 4 L.Ed.2d 70. So far as civil rights are concerned, Galante had at least one prior felony conviction in New York State. Any loss of civil rights had already been suffered. He does not therefore come within the rule of United States v. Morgan, 346 U.S. 502, 74 S.Ct. 247, 98 L.Ed. 248, Fiswick v. United States, 329 U.S. 211, 67 S.Ct. 224, 91 L. Ed. 196, or Pollard v. United States, supra. Galante's appeal is dismissed as moot.

The certificate filed by Judge Levet in Mirra's case sets forth, as a basis for the finding of contempt, the following transcript of a portion of the trial:

"In accordance with Rule 42(a) of the Federal Rules of Criminal Procedure, I hereby certify that the defendant Anthony Mirra, in the presence and the hearing of the Court, on April 3, 1961, committed the acts which are set forth in Exhibit No. 1 attached to this Certificate, and that these acts constitute a contempt of the Court. I further certify that the aforesaid acts were

Albert J. Krieger, New York City, for appellant Galante.

Leo B. Mittelman, New York City, for appellant Mirra.

William M. Tendy, Asst. U. S. Atty., for the Southern District of New York, New York City (Robert M. Morgenthau, U. S. Atty., and Arthur I. Rosett, Asst. U. S. Atty., So. Dist. of New York, New York City, on the brief), for appellee.

Before LUMBARD, Chief Judge, and FRIENDLY and SMITH, Circuit Judges.

**J. JOSEPH SMITH, Circuit Judge.**

During the course of a long (5½ month) narcotics conspiracy trial, eventually ending in a mistrial by reason of injury to a juror, leaving less than 12 available to serve, appellants were advised by the judgment that their courtroom misconduct was being noted. When the mistrial was declared appellants were called before the bench, held in contempt for the earlier actions, and each sentenced to imprisonment for 20 days. The sentence in the case of Mirra was to follow an earlier sentence then being served. Appeals were taken.

committed by the said Anthony Mirra during the course of the trial of United States v. Bentvena, et al., which trial was then being held before me. Accordingly, in pursuance of the Federal Rules of Criminal Procedure, I summarily find Anthony Mirra in contempt of this Court and commit him to the custody of the Attorney General, or his authorized representative, for imprisonment for a period of twenty days, said twenty day period to commence upon the expiration of the jail sentence which said Anthony Mirra is presently serving."

### Exhibit 1

"The Court: Under the circumstances I am compelled, of course, to consider this motion favorably. Before acting on it I wish to consider certain situations in the trial of this action. One relates to the defendant Mirra. On April 3, 1961, page 13349 of the minutes, the following took place in the presence of the Court and in the hearing of the court:

" 'The Court: Next witness.

" 'Mr. Katz: Alex Freeman.

" 'Defendant Mirra: Your Honor —

" 'The Court: Speak to Mr. Katz.

" 'Defendant Mirra: I am speaking to Mr. Katz, but he won't listen to me.

" 'The Court: No, speak to him off the record.

" 'Defendant Mirra: Don't you want to get to the truth, your Honor?

" 'The Court: Yes.

" 'Defendant Mirra: With all due respect, you are not trying to get at the truth, your Honor.

" 'The Court: I have spoken to you before about this.

" 'Defendant Mirra: Well, your Honor—

" 'The Court: Will you stop talking?

" 'Defendant Mirra: Your Honor —your Honor, with all due respect, please—

" 'The Court: Will you stop talking and talk to Katz?

" 'Defendant Mirra: With all due respect, your Honor, I want you to listen to me, please. Can I be heard?

" 'The Court: I am not going to listen to you, and I will declare a recess if you don't sit down.

" 'Defendant Mirra: Why don't you let the jurors know the truth?

" 'The Court: Yes, they will know the truth.

" 'Defendant Mirra: You are keeping the truth from them.

" 'The Court: There will be a recess.

" 'Defendant Mirra: Why don't you tell them that they are trying to poison them, the agents. We get blamed for everything in this courtroom.

" 'The Court: Keep your mouth quiet. (Jury out.)

" 'Defendant Mirra: Tell them the truth.'

"Upon the basis of the record in this court heard by me and seen by me I hereby sentence the defendant Mirra for contempt and direct that an order be prepared by the United States Attorney's office citing the facts which I have just mentioned and the sentence of twenty days to follow the present sentence now being served by the defendant Mirra on another charge."

The government contends that the incident is to be viewed in the light of the entire record of the trial, appellant that we are confined to the certificate under Federal Rules of Criminal Procedure, Rule 42(a), 18 U.S.C.A.

Rule 42 provides:

"Rule 42. Criminal Contempt

"(a) Summary Disposition. A criminal contempt may be punished summarily if the judge certifies that he saw or heard the conduct constituting the contempt and that it was committed in the actual presence of the court. The order of contempt shall recite the facts and shall be signed by the judge and entered of record.

"(b) Disposition Upon Notice and Hearing. A criminal contempt except as provided in subdivision (a) of this rule shall be prosecuted on notice. The notice shall state the time and place of hearing, allowing a reasonable time for the preparation of the defense, and shall state the essential facts constituting the criminal contempt charge and describe it as such. The notice shall be given orally by the judge in open court in the presence of the defendant or, on application of the United States attorney or of an attorney appointed by the court for that purpose, by an order to show cause or an order of arrest. The defendant is entitled to a trial by jury in any case in which an act of Congress so provides. He is entitled to admission to bail as provided in these rules. If the contempt charged involves disrespect to or criticism of a judge, that judge is disqualified from presiding at the trial or hearing except with the defendant's consent. Upon a verdict or finding of guilt the court shall enter an order fixing the punishment."

■■ We do not find it necessary here to determine to what extent a prior course of conduct relied on by a judge in holding a particular act contumacious must be spelled out in the certificate, since the particular act here certified and relied on was in itself a contempt.[1] The refusal of Mirra here to stop talking and sit down, portrayed in the certificate, required the judge to interrupt the trial, declare a recess and excuse the jury. This was an actual obstruction of the judicial process, punishable as a contempt, without regard to what had gone before. Taken as an isolated incident, the punishment by imprisonment for 20 days is severe. It interrupted a trial, however, which the record shows had been under way for many weeks, involving a large number of defendants. The judge was entitled to consider that fact in determining the punishment. MacInnis v. United States, 191 F.2d 157, 161, 9 Cir. 1951, cert. denied 342 U.S. 953, 72 S.Ct. 628, 96 L.Ed. 708.

■ The power to punish for contempt committed in the presence of the court is an unusual and summary sanction, arising from the necessity of control of judicial proceedings and their protection from disruption and delay, whether by litigants or others. Because of the possibility of its arbitrary use, and the absence of the usual safeguards of a criminal trial, the power must be sparingly and carefully used "with the utmost sense of responsibility and circumspection." Brown v. United States, 359 U.S. 41, 52, 79 S.Ct. 539, 547, 3 L.Ed. 2d 609. When a trial judge makes the determination on sufficient grounds that action is necessary, the sentence is within the discretion of the court, and is open to review only for arbitrary use of the power in abuse of discretion. United States v. Levine, 2 Cir. 1961, 288 F.2d 272, Shibley v. United States, 9 Cir. 1956, 236 F.2d 238, cert. denied 352 U.S. 873, 77 S.Ct. 98, 1 L.Ed.2d 77 (1956), Robles v. United States, 9 Cir. 1960, 279

---

1. If in basing the contempt conviction "upon * * * the record of this court" Judge Levet intended to rely upon all the other contumacious incidents set forth in the government's appendix, we would doubt whether the certificate was sufficiently informative. While a certificate in support of a summary contempt conviction need not and probably should not set out all the relevant incidents verbatim from the record, it should summarize them, with appropriate references to the record, in such a way as to make clear their nature and contumacious tendency.

F.2d 401, 406. There is here no hint of interjection of personal conflict on the part of the judge. Therefore we will not lightly set aside his determination that the concededly improper conduct of Mirra required recessing the trial to bring obedience to the lawful order of the court to desist from his conduct, nor that this interruption of trial was an offense deserving of so severe a punishment as 20 days imprisonment.

■ It is contended that even if the power existed summarily to punish Mirra for his acts, the power was lost by the six week delay in exercising it, and that at the very least any finding of contempt after such a delay required notice and hearing under 42(b). We think this contention answered by the decisions of this court and the Supreme Court in United States v. Sacher, 2 Cir. 1950, 182 F.2d 416, affirmed Sacher v. United States, 343 U.S. 1, 72 S.Ct. 451, 96 L.Ed. 717. It was permissible to postpone action until the end of the trial in progress, rather than risk prejudicing the completion of trial of the main issue. The judge acted promptly on the termination of that trial when the mistrial was declared. The punishment of Mirra may help to prevent recurrence of this conduct in this or other trials in the future.

■ We do not feel that the failure of the court more specifically to invite a statement from Mirra before sentence, first raised by our brother Friendly's dissent, was reversible error. Since the proceeding was under Rule 42(a), the formal requirement of Rule 32(a) is not applicable, although the reasons for the rule referred to by Judge Friendly may in a proper case require the court to interrogate the defendant personally. Here, however, the court had observed Mirra in court for 5½ months, had tried to provide orderly communication through counsel, giving Mirra the option to have counsel sit next to Mirra, an option Mirra rudely rejected, and later permitting Mirra to sit behind his lawyer at the counsel table, the better to communicate during the cross examination of witnesses. There was here no request from counsel or from Mirra to address the court before sentence, and no indication that any matter in mitigation would not have been considered if offered.

There was no error in the conduct of the contempt proceeding. The conviction of Mirra is affirmed.

FRIENDLY, Circuit Judge (concurring and dissenting).

I concur in the dismissal of Galante's appeal as moot, although regretting the action, 290 F.2d 908 (2 Cir. 1961), that made it so. With respect to Mirra, I agree that the judge was not required to utilize the full-scale procedure of F.R. Crim.Proc. 42(b). Nevertheless I would reverse the conviction because of the judge's failure, of his own motion, to accord Mirra any opportunity to speak in explanation or extenuation, either in person or by counsel. In my view this was so fundamental a requirement that it is immaterial either that Mirra's counsel did not affirmatively seek such an opportunity [1] or that the point was not urged before us.

1. One cannot tell how much chance there was to make such a request. Upon the motion for a mistrial being made, the judge said that, before acting upon it, he wished "to consider certain situations in the trial of this action" and proceeded immediately to read from the transcript of April 3, 1961. At the end of this reading, the following occurred:

"The Court: Upon the basis of the record in this court heard by me and seen by me I hereby sentence the defendant Mirra for contempt and direct that an order be prepared by the United States Attorney's Office citing the facts which I have just mentioned and the sentence of twenty days to follow the present sentence now being served by the defendant Mirra on another charge.

"Mr. Katz [attorney for Mirra]: I take exception to the ruling.

"The Court: Very well. Now the defendant Galante."

There was clearly no opportunity to make a request before the reading, and it seems rather plain that there was no time for Mirra to confer with his counsel afterwards.

*Audi alteram partem* is basic to our law; " \* \* \* it has long been a received rule in the administration of justice, that no one is to be punished in any judicial proceeding, unless he has had an opportunity of being heard," Parke, B., in In re Hammersmith Rent-charge, 4 Ex. 87, 96, 154 Eng.Rep. 1136, 1140 (1849) ; see Windsor v. McVeigh, 93 U. S. 274, 277, 23 L.Ed. 914 (1876). Very likely this principle underlies the historic rule requiring "allocution," now applicable in the federal courts in broadened fashion under F.R.Crim.Proc. 32 (a) and not without at least analogical application here; that too imposes an "affirmative duty" on the court, whether request by the defendant is made or not, Gadsden v. United States, 96 U.S. App.D.C. 162, 223 F.2d 627, 632 (D.C. Cir. 1955). Long ago English courts extended the requirement to an administrative agency, even in the teeth of an Act of Parliament making no provision for hearing of any sort, Cooper v. The Board of Works for the Wandsworth District, 14 C.B. (N.S.) 180, 143 Eng. Rep. 414 (1863),[2] as they had done much earlier, in a famous judgment, with respect to a private body.[3] See also Smith v. The Queen, 3 A.C. 614, 624 (1878). Coming close to the problem here, the Judicial Committee of the Privy Council, in In re Pollard, 5 Moore P.C. (N.S.) 111, 16 Eng.Rep. 457 (1868), held the granting of an opportunity to make a statement to be essential before a sentence for contempt, even in the case of an attorney who had repeatedly indulged in remarks in open court that the judge considered insulting. Later, applying a Hong Kong ordinance relating to perjury, which provided that "where such perjury is committed by any person examined as a witness in open Court, it shall be lawful for the Court, instead of directing such prosecution to be instituted as aforesaid, either to commit such witness as for a contempt of the Court to prison for any term not exceeding three months, \* \* \* or to fine such witness in any sum not exceeding one hundred dollars," a dichotomy somewhat parallel to F.R.Crim. Proc. 42(a) and (b), the Judicial Committee ruled that the judge should have given the accused "an opportunity of giving reasons against summary measures being taken," even though this does not appear to have been sought.[4]

---

2. Chief Justice Erle sustained the plaintiff's contention "that, although the words of the statute, taken in their literal sense, without any qualification at all, would create a justification for the act which the district board has done, the powers granted by that statute are subject to a qualification which has been repeatedly recognized, that no man is to be deprived of his property without his having an opportunity of being heard." p. 187, 143 Eng.Rep. at p. 417. Byles, J., thought that " \* \* \* although there are no positive words in a statute, requiring that the party shall be heard yet the justice of the common law will supply the omission of the legislature." p. 194, 143 Eng.Rep. at p. 420. For the development in the United States see 1 Davis, Administrative Law Treatise (1958), ch. 7.

3. The King v. The Chancellor, Masters and Scholars of the University of Cambridge, 1 Str. 557, 93 Eng.Rep. 698 (1723). In this mandamus to restore Richard Bentley to his "academical degrees," Mr. Justice Fortescue traced *audi alteram partem* back to the garden of Eden, saying (at p. 567, 93 Eng.Rep. at p. 704) :

"The laws of God and man both give the party an opportunity to make his defence, if he has any. I remember to have heard it observed by a very learned man upon such an occasion, that even God himself did not pass sentence upon Adam, before he was called upon to make his defence."

For the more modern development see Chafee, The Internal Affairs of Associations Not for Profit, 43 Harv.L.Rev. 993, 1015–1016 (1930), and authorities cited.

4. Chang Hang Kiu v. Piggott, [1909] A.C. 312, 314, 316. The Committee added, at p. 316:

"This need not have involved, as suggested in argument, the case being thereupon retried and witnesses called, which would have deprived the alternative course of the summary character which

Thus has Blackstone's much quoted statement, "If the contempt be committed in the face of the court, the offender may be instantly apprehended and imprisoned, at the discretion of the judges, without any further proof or examination," 4 Com. 286, been qualified in the land that gave it birth.

Even a right so basic as that to speak in one's own defense must sometimes yield, as was held in Ex parte Terry, 128 U.S. 289, 9 S.Ct. 77, 32 L.Ed. 405 (1888), to the overriding necessities of maintaining order in the court-room or of protecting officers of the court. Hence it may well be that if the judge had sentenced Mirra immediately after the latter's remarks on April 3, no opportunity even to make a statement need have been given. But surely there was no such necessity here, when the charge was not made until the trial had ended. Although the delay did not prevent proceeding under Rule 42(a), since the basic facts were within the judge's knowledge, an abridgement of the elemental right to make a statement in explanation or extenuation, justifiable in any case only because of "the need for immediate penal vindication of the dignity of the court," Cooke v. United States, 267 U.S. 517, 536, 45 S.Ct. 390, 395, 69 L.Ed. 767 (1925), is not permissible when no such need exists. Offutt v. United States, 348 U.S. 11, 75 S.Ct. 11, 99 L.Ed. 11 (1954), is enough to show that Rule 42(a) is not to be given a literal application. Not a word in the Rule suggests that on some occasions the contempt proceeding must be before another judge—indeed, it very nearly suggests the opposite—yet the Supreme Court held it to require precisely that under the circumstances of that case.

However unlikely it was that anything that Mirra or his counsel might have said would have altered the judge's determination, Mirra was entitled to the opportunity; [5] moreover, although I do not consider this essential, an argument such as that made before us on Mirra's behalf might at least have led the judge to impose a lesser sentence than what my brothers characterize as a severe one for the sole incident named in the certificate.

I find nothing in the language of Rule 42(a) or in the decisions under it inconsistent with these views. "Summary Disposition" and "summarily" mean only that certain usual procedural requirements may be dispensed with, not that basic rights can be sacrificed. If examples are needed to show that these words do not imply a lack of opportunity for a response of some sort, 9 U.S.C. § 4, F.R.Civ.Proc. 56, 28 U.S.C.A., and Supreme Court Rule 44, subd. 3, 28 U.S.C.A. will serve. Giving a defendant charged with contempt in open court a chance "to state why the judgment of the court should not be pronounced against him" was a procedure known long before adoption of the Federal Criminal Rules, In re Maury, 205 F. 626, 628 (9 Cir. 1913). Yet Rule 42(a) "did not confer power upon district judges not possessed prior to March 21, 1946." Offutt v. United States, supra, 75 S.Ct. at 13; it "was not inserted in the Rules in order to ease the difficulties of prosecuting contempts," Chief Justice Warren dissenting in Brown v. United States, 359 U.S. 41, 54, 79 S.Ct. 539, 548, 3 L.Ed.2d 609 (1959). Although in one sense the judge in Sacher had not afforded the defendants "a chance to say a word before he acted," 343 U.S. at 14, 72 S.Ct. 457, Mr. Justice Black dis-

(it is reasonable to suppose) was deemed important by the framers of the Ordinance who enacted it as an alternative to formal proceedings for perjury; but it would have given an opportunity for explanation and possibly the correction of misapprehension as to what had been in fact said or meant."

More recently Samaratunga v. The Queen, [1958] A.C. 424, 432, recognized

the principle of the Pollard and Chang Hang Kiu cases but held that an adequate "opportunity of giving reasons against summary measures being taken" had been afforded.

5. It is hard to believe that anything that could have been said by Pollard, supra note 4, would have affected the sentencing judge.

senting, he had, of his own motion, permitted each of them to address the court immediately after he read the certificates and orders, 182 F.2d 416, 418 (2 Cir. 1950), and surely would have altered these if defendants' statements had proved persuasive; I therefore do not read Sacher as sanctioning the procedure here. This is particularly so since in Brown v. United States, supra, 359 U.S. at 52, 79 S.Ct. 547, in affirming a conviction for contempt under Rule 42 (a), the Court emphasized that "Before sentence was imposed, the petitioner's counsel was fully, repeatedly and patiently heard." See also Levine v. United States, 362 U.S. 610, 613–614, 618, 80 S.Ct. 1038, 4 L.Ed.2d 989 (1960). Important as is the right to a public trial, the lack of which a bare majority held in Levine not to require reversal in the absence of a request for it, under the particular circumstances there presented, it is not so completely basic as the right to be heard at all.