434 F.2d 861
 70-2 USTC P 9718
 Walter G. PIETSCH, Plaintiff-Appellant,
v.
The PRESIDENT of the UNITED STATES, the Secretary of the
United StatesTreasury, the District Director of
Internal Revenue, Brooklyn
District,Defendants-Appellees.
 No. 84, Docket 34605.
 United States Court of Appeals, Second Circuit.
 Argued Oct. 13, 1970.
Decided Nov. 25, 1970.
 
 Walter G. Pietsch, pro se, and Morton Stavis, New York City, for plaintiff-appellant.
 Leonard J. Henzke, Atty., Dept. of Justice (Johnnie M. Walters, Asst. Atty. Gen., Lee A. Jackson and Elmer J. Kelsey, Attys., Dept. of Justice, Washington, D.C., Edward R. Neaher, U.S. Atty., E.D. New York, of counsel), for defendants-appellees.
 Before CLARK, Associate Justice,* LUMBARD, Chief Judge, and KAUFMAN, Circuit Judge.
 
 CLARK, Justice (retired):
 
 1
 Pietsch filed a timely income tax return for the year 1968 but denied liability for the amount of the income tax surcharge authorized by Section 102 of the Revenue and Expenditure Control Act of 1968, P.L. 90-364, 82 Stat. 251.
 
 
 2
 On October 23, 1969, Pietsch, acting pro se, brought this action asking a declaration that American participation in the Vietnam military conflict was unconstitutional and enjoining the President of the United States and other federal officials from collecting the income tax surcharge assessed against him. In due time the Government moved to dismiss for failure to state a claim upon which relief may be granted. Thereafter Pietsch filed a motion for a preliminary injunction and a memorandum in opposition to the Motion to Dismiss. On January 2, 1970, Pietsch called on Judge Rosling, the Presiding Judge before whom this action was pending, at his chambers and finding him absent, wrote him a note saying:
 
 
 3
 'Judge Rosling: I was here today. Where were you? Fifteen or more GI's died today and twice as many Vietnamese. That number will continue to die until you hear this case and stop the unconstitutional Vietnam war.
 
 
 4
 Walter G. Pietsch'
 
 
 5
 On January 6, 1970 the Motion to Dismiss was granted and a copy of the order was mailed to Pietsch. On January 9 he filed a 'Supplementary Addition to Amended Motion for a Preliminary Injunction' in which he moved for an order 'barring forthwith any and all actions by the Government of the United States which would serve to continue or otherwise perpetuate the role of the United States as a direct combatant in the war in Viet Nam.' On the same day while the Court was hearing the criminal calendar, Pietsch created some type of disturbance in the back of the courtroom which interrupted the proceedings.
 
 
 6
 The notes of the official court reporter indicate that thereupon the Judge inquired: 'Who is that man? Is there a Marshal present?' A voice replied from the rear of the courtroom: 'I am due for a hearing today * * *.' The Judge then instructed the Marshal: 'Take that man outside. If he refuses, take him into the cell.' The same voice then inquired: 'You refuse to give me the right to speak?', and the Judge again directed the Marshal: 'Take him outside,' indicating the street door to the courtroom. The voice then spoke up: 'Before you take me away-- tell me the charge.' The Judge then directed the Marshal: 'Bring that man forward. What is your name?' The voice answered, 'Walter Pietsch, Plaintiff in an action,' and the Judge announced: 'You are disturbing the Court-- ten days in prison.' Mr. Pietsch then replied: 'I didn't disturb the court. You are the one who started shouting.' The Judge then directed the Marshal: 'Take him out.' Pietsch then inquired: 'For what reason? God damn it-- is this a disctatorship? You can't hear a case in open court?' He was then removed from the courtroom.
 
 
 7
 Later in the day about six p.m., counsel, whom Pietsch had obtained in the meanwhile, approached the bench and after some discussion, Pietsch was brought back into the courtroom and his sentence was commuted to time already served. We attach as an appendix the official report of the proceeding.
 
 I.
 
 8
 As to Pietsch's complaint we find that it was properly dismissed. At the outset we are confronted with Section 7421(a) of the Internal Revenue Code of 1954[1] which provides that: 'No suit for the purpose of restraining the assessment or collection of any tax shall be maintained in any court by any person * * *.' The courts have long held this mandate of the Congress to foreclose attacks-- constitutional or otherwise-- on revenue acts unless it be shown that 'under the most liberal view of the law and the facts, the United States cannot establish its claim' and that 'taxpayer would suffer irreparable injury if collection were effected.' Enochs v. Williams Packing & Navigation Co. Inc., 370 U.S. 1, 7, 82 S.Ct. 1125, 1129, 8 L.Ed.2d 292 (1962).
 
 
 9
 Neither of these conditions is present here. Pietsch does not assert that collection of his surcharge will do more than temporarily inconvenience him. And it strikes us as most unlikely that Pietsch would prevail in a refund suit, for he does not attack the validity of the tax surcharge itself, but only of some of the uses to which its proceeds are put. Even assuming for the moment that the prosecution of the war in Vietnam were clearly illegal-- a generous assumption indeed-- the surtax is hardly so closely intertwined with the war that it would have to fall as well.
 
 
 10
 Perhaps aware that his suit against the collection of his surtax faces these imposing difficulties, Pietsch has also assailed the war directly, seeking declaratory and injunctive relief. As to some of the war-related measures which Pietsch would have us enjoin, such as the draft, he asserts no interest in the matter beyond that of a citizen-at-large and therefore lacks standing to contest their legality. See Massachusetts v. Mellon, 262 U.S. 447, 488, 43 S.Ct. 597, 67 L.Ed. 1078 (1923). The only measure which Pietsch is arguably in a position to challenge is the expenditure of funds in furtherance of the war. Under Flast v. Cohen, 392 U.S. 83, 88 S.Ct. 1942, 20 L.Ed.2d 947 (1968), however, Pietsch's attack must assert the violation of 'specific constitutional limitations imposed upon the exercise of the congressional taxing and spending power * * *,' id. at 103, 88 S.Ct. at 1954. Although more than one purpose has been attributed to Congress' war power, that power has never been seen as a 'specific * * * limitation' upon the appropriation power. Pietsch's status as a federal taxpayer therefore does not entitle him to challenge the expenditure of funds for the Vietnam war.
 
 
 11
 We therefore affirm the dismissal of the complaint.
 
 II.
 
 12
 The Order and Judgment in Contempt finds that Pietsch behaved in an 'unruly, loud, boisterous manner disrupting the proceedings of this Court and the administration of justice.' The Court further found that upon being instructed to leave the courtroom Pietsch 'did refuse, physically resisting the efforts of the United States Marshal to escort him out of the courtroom and then having addressed this Court in a contemptuous and boisterous manner; all the foregoing occurring in the sight and sound of the court. * * *'
 
 
 13
 Rule 42(a) of the Federal Rules of Criminal Procedure provides that where the contempt is committed in the actual presence of the Court and the Judge certifies that he saw or heard the conduct constituting the contempt, the offense may be punished summarily. It further requires that the order of contempt recite the facts and be cited by the Judge and entered of record. It will be noted that the Order here does not recite the facts which lead to the finding and sentence of contempt but merely states that Pietsch 'behaved in an unruly, loud, contemptuous and boisterous manner interrupting the proceedings.' The facts as to how the proceedings were disturbed were not recited. Upon returning to the transcript of the occurrence, we find no reference to the nature of the disturbance which led the Judge to initially inquire: 'Who is that man?' We note that after Pietsch replied: 'I am due for a hearing today,' the Judge ordered the Marshal to 'take that man outside. If he refuses, take him into the cell.' This Order was not countermanded and the Marshal was directed to 'bring that man forward.' After Pietsch arrived at the Bench, the Judge inquired as to his name and upon being informed that he was plaintiff in an action, the Judge immediately said: 'You are disturbing the Court. Ten days in prison.' The remainder of the colloquy between the Judge and Pietsch, including the blasphemy the latter uttered, came after the sentence. Apparently the words of the Order concerning the terms 'unruly, loud, contemptuous and boisterous' action must have referred to the events occurring after the sentence, since the transcript reflected no such situation prior thereto. Likewise the finding that Pietsch 'upon being instructed to leave the courtroom, did refuse physically, resisting the efforts of the United States Marshal to escort him out of the courtroom * * *' appeared to have happened after the sentence was pronounced. This Court said in United States v. Galante, 298 F.2d 72, 75 n. 1 (1962);
 
 
 14
 'While a certificate in support of a summary contempt conviction need not and probably should not set out all the relevant incidents verbatim from the record, it should summarize them, with appropriate references to the record, in such a way as to make clear their nature and contumacious tendency.'
 
 
 15
 The certificate here being far too defective, we are obliged to reverse the conviction.
 
 
 16
 This is not to say that we excuse the conduct as reflected by the entire record nor that we take issue with the exercise of power to summarily punish a contempt in the narrowly limited field authorized by Rule 42(a) but only that the procedural safeguards that the Rule provides must be strictly adhered to lest the drastic power authorized escape the permissible limits of reason and fairness. The risk to impartial justice is too great to do otherwise. In the development of our liberties, strict adherence to procedural regularity has been a most potent factor. Burdeau v. McDowell, 256 U.S. 465, 477, 41 S.Ct. 574, 65 L.Ed. 1048 (1921). Moreover as was said in United States v. Galante, supra, 298 F.2d at 75:
 
 
 17
 'The power to punish for contempt committed in the presence of the court is an unusual and summary sanction, arising from the necessity of control of judicial proceedings and their protection from disruption and delay, whether by litigants or others. Because of the possibility of its arbitrary use, and the absence of the usual safeguards of a criminal trial, the power must be sparingly and carefully used 'with the utmost sence of responsibility and circumspection.' Brown v. United States, 359 U.S. 41, 52, 79 S.Ct. 539, 547, 3 L.Ed.2d 609. * * *'
 
 
 18
 This teaching has been repeated throughout our history beginning as early as Chief Justice Marshall's days where the limits upon the exercise of power were said to be 'the least possible power adequate to the end proposed.' Anderson v. Dunn, 6 Wheat. 204, 232, 5 L.Ed. 242 (1821). And in order to minimize the abuse of power of summary punishment, its use has been 'always, and rightly * * * regarded with disfavor.' Sacher v. United States, 343 U.S. 1, 8, 72 S.Ct. 451, 454, 96 L.Ed. 717 (1952). The rectitude of judicial proceedings can only be assured through our continued support and devotion to these principles.
 
 
 19
 The Judgment holding Pietsch in contempt is reversed.
 
 APPENDIX
 
 20
 The Court: (Addressing a defendant who was being sentenced) (Throughout the trial, you will have the right to be represented by an attorney of your own choosing. If you cannot afford an attorney, an attorney will be assigned by the Court without charge to you, or if you prefer--
 
 
 21
 Who is that man?
 
 
 22
 Is there a Marshal present?
 
 
 23
 A Voice: I am due for a hearing today--
 
 
 24
 The Court: Get a Marshal.
 
 
 25
 The Clerk: The Marshal is in the courtroom.
 
 
 26
 The Court: Take that man outside. If he refuses, take him into the cell.
 
 
 27
 A Voice: You refuse to give me the right to speak?
 
 
 28
 The Court: Take him outside (indicating the street door).
 
 
 29
 A Voice: Before you take me away, tell me the charge.
 
 
 30
 The Court: Bring that man forward.
 
 
 31
 A Voice: Tell me the charge.
 
 
 32
 The Court: Bring the man forward.
 
 
 33
 What is your name?
 
 
 34
 A Voice: Walter Pietsch. I am a Plaintiff in an action--
 
 
 35
 The Court: You are disturbing the Court, 10 days in prison.
 
 
 36
 Mr. Pietsch: I didn't disturb the Court. You are the one that started shouting.
 
 
 37
 The Court: Take him out.
 
 
 38
 Mr. Pietsch: For what reason'
 
 
 39
 God damn it. What is this, a dictatorship?
 
 
 40
 You can't hear a case in open court?
 
 
 41
 (Whereupon, Mr. Pietsch is taken from the Court.)
 
 
 42
 (Whereupon the following occurred during the calendar call of U.S.A. vs. William Moore.)
 
 
 43
 The Court: What are the conditions inside? You are still breathing heavy. I will get the commitment out later in the day.
 
 
 44
 (At 6:00 P.M. attorneys approach the bench.)
 
 
 45
 The Court: What is your name?
 
 
 46
 Mr. Harris: Gerald Harris.
 
 
 47
 The Court: What is the problem with this wild man?
 
 
 48
 Mr. Harris: May I say I am not admitted into practice in this court.
 
 
 49
 The Court: You are now admitted.
 
 
 50
 Mr. Harris: Thank you.
 
 
 51
 The Court: What is your name?
 
 
 52
 Mr. Rosenthal: Louis Rosenthal.
 
 
 53
 The Court: I am very tired. I have had a full day.
 
 
 54
 We had a courtroom filled with approximately 60 lawyers. It was at this moment that this fellow, who holds me responsible for every drop of blood shed in Viet Nam, created a disturbance in the back.
 
 
 55
 I gave him the choice to get out-- he was directing it to me. It was just a disruption and he had a lot of long-hairs in the back, and they were reasonably quiet.
 
 
 56
 They did not look like lawyers, so I assume they are litigants or co-adjutants.
 
 
 57
 Mr. Harris: Friends of the Court perhaps.
 
 
 58
 The Court: He was a big guy. I only had two Marshals.
 
 
 59
 Mr. Harris: I believe he has been cut down to size by what happened this afternoon.
 
 
 60
 The Court: He created a disturbance and I had a calendar to take care of, and since he wouldn't get out, I figured I would welcome him aboard.
 
 
 61
 I asked him his name, already suspecting his name.
 
 
 62
 He was not going to conduct a sit-in in my Court. That cannot happen, so I said, '10 days.'
 
 
 63
 Well, he struggled with the Marshals and he is now cooling off.
 
 
 64
 It is my purpose to get my Court business finished and you will notice it is five after 6 and I have not been waiting for you, I was here on the bench until a quarter to six, 10 to six, trying to conclude that calender.
 
 
 65
 Everyone has gone except a few cheering multitude, my people in the back, all United States Attorneys.
 
 
 66
 There is no audience.
 
 
 67
 What should we do with him?
 
 
 68
 There was no calendar here on the 2nd of January, but that did not prevent him from making his own calendar.
 
 
 69
 I was busy with a satchel full of papers at home, that I took with me over the weekend, and my girl will tell you what I brought in on Monday, the 5th of January
 
 
 70
 Among the things that I found on my desk, was a note addressed to me, signed by Mr. Pietsch.
 
 
 71
 'I was here on January 2nd. Where were you,' and then he went on to say, 'Do you realize that every day the Court'-- I-- 'you do not stop the war in Viet Nam, it is costing lives.'
 
 
 72
 I am a stubborn guy, and I will not issue an injunction against the War and tell the Pentagon to bring the solidiers home. I will not do that.
 
 
 73
 What will we do with him?
 
 
 74
 Mr. Harris: He has had an opportunity to reflect--
 
 
 75
 The Court: Has he cooled off?
 
 
 76
 Mr. Harris: Yes.
 
 
 77
 The Court: Bring him out and we will commute it to time already served.
 
 
 78
 Mr. Harris: I was going to ask your Honor to permit him to make a public apology.
 
 
 79
 The Court: I do not take apologies from lawyers, and I do not take it from litigants.
 
 
 80
 We are adults, and mature.
 
 
 81
 Tell him not to disrupt my proceedings. I have a Court to run.
 
 
 82
 Mr. Harris: I was hopeful, by doing that, he might purge himself--
 
 
 83
 The Court: He has litigation, let him litigate to his heart's content. I do not want to put him in the position where he feels that he made some sort of commitment to me, or to any other Judge.
 
 
 84
 What I want him to do, if he comes into my courtroom, is to come in quietly. I do not care what he wears, or what he looks like. I have already had, while I was trying a draft case, the Marshal coming to me and saying that there is someone wearing shorts. This was before the day of the mini-skirt. I soon noticed that there was somebody-- he may have been wearing shorts.
 
 
 85
 He did not have on a coat or even a shirt.
 
 
 86
 I paid no attention to him, because those things do not disturb me.
 
 
 87
 I conduct a quiet, but disciplined Court. Nobody has to apologize to me. If he wants to come here and be a member of the audience, I welcome him aboard, since I have so few observers.
 
 
 88
 I have one buff that I see all the time. There are no problems with me. I have a Court to run and I have lawyers before me. I cannot afford to be shamed in the presence of the members of the Bar.
 
 
 89
 It is just not right. It is not nice, and when you have no time for lengthy deliberation, you have to act quickly.
 
 
 90
 The fellow was creating a commotion. He stood in the center aisle there and created the commotion.
 
 
 91
 Everything that happened is right on the record. The Reporter kept writing. I asked him later, 'Do you have everything down?'
 
 
 92
 He said, 'Yes,' and remember, this was in the middle of another proceeding. He has got it and I am going to have him transcribe it, so I will have it for future reference.
 
 
 93
 He was not on the calendar today. His complaint was dismissed on the Government's motion. He had made his motion, such as it was, back last September, and I kept adjourning it, and then I turned on the television and I found I was getting unfavorable publicity.
 
 
 94
 I finally had to dismiss his motion.
 
 
 95
 You cannot say to the President of the United States, and he was the first of many named defendants-- you just cannot-- and so I dismissed it, but fearful that he might show, I had my Clerk send out one of the notices that we always send out, which usually advises the lawyers that the matter was on the calendar.
 
 
 96
 This notice was to tell him that nothing was on today, because the case had already been dismissed.
 
 
 97
 It did not take clairvoyance on my part to know who was creating the tumult in the center of the courtroom.
 
 
 98
 The only remaining concern is the man's unblemished criminal record-- I have already signed it, so I cannot unsign it.
 
 
 99
 Mr. Harris: Is this criminal or civil contempt?
 
 
 100
 The Court: This is criminal contempt.
 
 
 101
 He disrupted the Court.
 
 
 102
 Incidentally, the long-hairs that I told you about, as soon as they saw it was a little expensive, they ran.
 
 
 103
 If it was Wednesday, maybe they would have stayed, but Friday, you have to stay in over the weekend and you do not know if you can get the Court of Appeals to bail you out.
 
 
 104
 Bring him in with a few Marshals, please.
 
 
 105
 Mr. Pietsch, the Court has finished its proceedings that you were disrupting, so I will commute your sentence to time already served.
 
 
 106
 Behave yourself after this. I am not a bad guy.
 
 
 107
 Mr. Harris: Thank you, your Honor.
 
 
 108
 The Court: No matter who else is responsible for what is going on in Viet Nam, I am not.
 
 
 109
 I even have relatives over there.
 
 
 110
 Mr. Harris: Thank you.
 
 
 111
 The Court: Let me just explain that your attorney wanted you to offer an apology.
 
 
 112
 I do not take apologies from anybody, from lawyers and not from litigants.
 
 
 113
 We are all adults.
 
 
 114
 I had a courtroom full of people and I got finished with them a quarter to six, and I am not as young as I might be.
 
 
 115
 I could have adjourned half the calendar if I did not finish. I could put it over to Monday and have the lawyers come back. I did not do that. I did try to accommodate the lawyers and everyone else.
 
 
 116
 The first direction I gave you was to go outside and complete your conversation-- through the front door-- and when you considered that to be an antagonistic remark by the Court and continued your disruption, after I gave you the front door then the front door leads to the cooler.
 
 
 117
 The hour now is a quarter after six, and I think you are sufficiently cooled off. I do not say that you should stop suing. Sue to your heart's content, but do not make noises when the Court is in session.
 
 
 118
 Commuted to time already served.
 
 
 119
 You are discharged.
 
 
 
 *
 United States Supreme Court, Retired, sitting by designation
 
 
 [1]
 Internal Revenue Code of 1954, Title 26, U.S.Code Sec. 7421(a):
 '* * * no suit for the purpose of restraining the assessment or collection of any tax shall be maintained in any court by any person, whether or not such person is the person against whom such tax was assessed.'