**UNITED STATES of America,**
**Appellee,**

v.

**Salvatore PANICO, Defendant-Appellant.**

**No. 400, Docket 27667.**

United States Court of Appeals
Second Circuit.

Argued July 17, 1962.

Decided Sept. 14, 1962.

Friendly, Circuit Judge, dissented.

Jerome Lewis, New York City, for defendant-appellant.

Jonathan L. Rosner, Asst. U. S. Atty., for the Southern Dist. of New York (Robert M. Morgenthau, U. S. Atty., and Sheldon H. Elsen and Arnold N. Enker, Asst. U. S. Atty., Southern Dist. of New York, on the brief), for appellee.

Before MOORE, FRIENDLY and SMITH, Circuit Judges.

**J. JOSEPH SMITH**, Circuit Judge.

This is an appeal from a judgment of contempt entered July 5, 1962 in the United States District Court for the Southern District of New York, by Judge MacMahon, upon a certificate filed pursuant to Rule 42(a) of the Federal Rules of Criminal Procedure, 18 U.S.C.A., sentencing the defendant to fifteen months to be served at the expiration of a sentence now being served in the State of New York and a sentence imposed by the State of Florida.

The actions of defendant which prompted the use of the contempt power occurred during a twelve week trial, upon an indictment charging twenty-nine defendants with violations of the federal narcotics laws. The first trial before Judge Levet ended in a mistrial when the foreman of the jury sustained injuries on the eve of summation at which time no alternate jurors remained. At the conclusion of said trial, and prior to the declaration of a mistrial, Judge Levet adjudged Galante and Mirra in contempt

of court. United States v. Galante, 298 F.2d 72 (2 Cir.1962). An insight into the succession of delays and attempts to forestall a trial may best be gained by referring to some of the related cases previously decided by this court. United States v. Bentvena, 288 F.2d 442 (2 Cir. 1961); United States v. Galante, supra; United States v. DiPietro, 302 F.2d 612 (2 Cir.1962); United States v. Bentvena, 304 F.2d 883 (2 Cir.1962).

Appellant concedes, as indeed he must, that the conduct complained of was contemptuous on its face but argues that appellant "was too mentally ill to formulate the intent to be contumacious." In effect he urges that the actions were not intentional. Appellant also argues that he was not sane at the time of sentence and so the sentence is unlawful as an insane person may not be sentenced to imprisonment. With respect to defendant's claims of insanity the trial court concluded the following, as set out in the certificate:

"The court had him examined by a psychiatrist, took time out of this trial for three days, conducted psychiatric hearings, found him able, capable of understanding the trial, of standing trial. Despite that, he persisted in a course of conduct, faked a hanging attempt, attempted to slash his wrists but made absolutely sure that it did not kill him. There are seven cuts on each arm placed about an inch apart, a deliberate effort to make certain it wasn't effective.

"With that plus your repeated requests and a mandamus of the United States Court of Appeals, the Court directed a further examination of Panico. A psychiatrist examined him and found him sane in all respects.

"The Court takes notice of the fact that he is now an inmate at Sing Sing, serving two and a half years to five years, that he faces on top of that 18 months for a conviction in Florida, and that there are charges against him pending in Bronx County as well as the charge for which he has just stood trial in this Court. Obviously it was to his advantage to break up this trial and to do everything in his power to inject prejudice in the record. The contempt sentence, however heavy, would be disproportionate to any sentence he might face here were he found guilty. His acts were wilful, deliberate, calculated to impede, obstruct, delay and abort this trial.

"The Court takes judicial notice of the entire record before Judge Levet, of his behavior there, his good behavior there. The Court takes judicial notice of his behavior here prior to the incident of his jumping in the jury box and of the many conferences and sessions the Court had with him, with Mr. Todaro and with his other counsel, with you, Mr. Aronne, in attempts to arrange substitution for times when you couldn't be here. There is nothing insane about this man whatever. The Court so found it at the time. I so find it now."

 Although the expert witnesses testified that Panico was not malingering they were not present at the time of the incidents which prompted the summary conviction for contempt. Moreover, it is not at all clear that they did not mean only that he was not faking when he was examined by them. In any event, the court is not obliged to accept the conclusions of the experts. We do not think that the conclusion of Judge MacMahon with respect to the deliberate and calculated nature of defendant's acts constitutes reversible error. United States v. Galante, supra at p. 75 of 298 F.2d and cases cited therein.

 Perhaps more serious than the correctness of the determination with respect to defendant's calculated intentions is the propriety of making such a determination in a 42(a) proceeding when a substantial question has been raised which requires expert testimony. On the one hand is the need for the court

to mete out swift punishment in order to preserve the integrity of the judicial system. The instant case is eloquent testimony as to the need to preserve order in the courtroom lest defendants be convicted unjustly and absent the safeguards of an orderly and impartial trial. Justice can be reached only in an atmosphere of order and dignity. There can be little doubt that the effectiveness of punishment as a deterrent is related not only to the quality of the possible punishment but to the certainty and promptness as well. Were we to require resort to the more lengthy procedures of 42 (b) whenever the defendant raises a serious question of intention or "mens rea" we fear this would seriously undercut the power of the courts to punish for contempt. On the other hand the very nature of the power to punish for contempt requires that the power be scrupulously circumscribed, Brown v. United States, 359 U.S. 41, 52, 79 S.Ct. 539, 3 L.Ed.2d 609 (1959), and 42(a) makes no provision for the taking of any testimony. But see United States v. Galante, supra at 77 of 298 F.2d (Friendly, C. J., dissenting). Because testimony had been taken concerning appellant's sanity during the course of the trial, we do not reach the question of whether such testimony may be taken in connection with a 42(a) proceeding since the Judge is permitted to consider all things which took place during the proceedings in connection with which the contempt arises. Particularly the defendant's intention inasmuch as the defendant's subjective state of mind is the primary focus of the inquiry, for contempt is, after all, an "intentional act committed in defiance of the authority and dignity of the court." 61 Col.Law Rev. 727 (1961).

█ If the issue before the court is considered to be the propriety of the trial court's deciding, in a 42(a) proceeding, a question of fact which by its very nature does not lend itself to determination merely by consideration of factors which impress themselves directly upon the sensory perceptions of the presiding judge the answer is the same. The question in the instant case did not relate to conduct which transpired beyond the presence of the court as in United States v. Sacher, 182 F.2d 416 (2 Cir.1950), cert. denied 341 U.S. 952, 71 S.Ct. 1010, 95 L.Ed. 1374 (1951). On the contrary, the inquiry was concerned with the subjective character of actions which did take place in the presence of the court.

The judgment is affirmed.

FRIENDLY, Circuit Judge (dissenting).

My inability to join in affirming Salvatore Panico's sentence for contempt pursuant to Rule 42(a) of the Federal Rules of Criminal Procedure will not, I hope, be attributed to lack of appreciation of the problems experienced by the district judges in the trial and retrial of this difficult criminal case, to excessive naiveté, or to failure to understand that government cannot permit "The interests of society in the preservation of courtroom control * * * to be frustrated through unchecked improprieties," Sacher v. United States, 343 U.S. 1, 8, 72 S.Ct. 451, 96 L.Ed. 717 (1952), on the part of criminal defendants. The issue on which I am forced to part company with my brothers is a much narrower one—whether this vital interest has here been vindicated in the manner required by Rule 42 of Criminal Procedure in its effort to reconcile the need of maintaining order in the courtroom with that of preserving fundamental individual rights.

Conceivably Congress could have deemed the interest in protecting the order and dignity of the courts to be so important as to authorize judges to punish certain acts even though the actor was ignorant of the character and quality of what he had done. No one asserts that Congress has done this. The conduct for which Salvatore Panico has been punished—quite justifiably if he knew what he was doing—is described in the Federal catalogue of crimes, 18 U.S.C. § 401, and our criminal law normally "postu-

lates a free agent confronted with a choice between doing right and doing wrong and choosing freely to do wrong," Pound, Introduction to Sayre, Cases on Criminal Law (1927), quoted in Morissette v. United States, 342 U.S. 246, 250, fn. 4, 72 S.Ct. 240, 96 L.Ed. 288 (1952).

In the usual case there is no issue whether an alleged contemnor was capable of making the choice that he did —on this very appeal there was none as to the five defendants whose conviction we unanimously affirmed, United States v. Bentvena, 2 Cir.1962, 304 F.2d 883. As to Salvatore Panico there was. When I state there was such an issue, I would not be understood as saying that, in this exceptional area, the mere making of a claim of lack of a "vicious will," 4 Bl. Comm. 21, suffices to create an issue on that score as it normally does in a criminal case; F.R.Crim.Proc. 42(a) can well be construed as authorizing the judge, by analogy to F.R.Civ.Proc. 56(c), to disregard a claim of this sort that does not create a "genuine issue." Yet my brothers do not and, I think, could not say that, even with this qualification, no issue was created here, at least as to appellant's capacity to "choose" to invade the jury box and address the jurors on May 23 and to perform the incidents on the two following days, which must have been an important basis for the long sentence of 15 months' imprisonment. Dr. Arnett, a psychiatrist appointed by the Court, testified on May 25 that Salvatore had "developed a paranoid state with psychosis"; Dr. Hyslop, later appointed, admitted that the May 23 incident "could have been a hysterical display"; and Dr. Weiss, called by appellant, thought that Salvatore did not fully comprehend the courtroom proceedings. Despite all this it may well be that, as my brothers say, we could not properly upset the judge's conclusion, based on other testimony of the doctors and his own observation, that "There is nothing insane about this man whatever," and this despite the fact, communicated to us by counsel after the argument, that the psychiatrist at Sing Sing Prison and two others have now diagnosed Salvatore as schizophrenic—if the judge had power to come to any conclusion for the purpose here relevant. I think he did not.

The summary procedure authorized by F.R.Crim.Proc. 42(a) rests on the basis, as its words clearly imply, that "There is no need of evidence or assistance of counsel before punishment, because the court has seen the offense," Cooke v. United States, 267 U.S. 517, 534, 45 S. Ct. 390, 69 L.Ed. 767 (1925). Although Judge MacMahon "saw or heard" Salvatore's physical acts, he had not and could not have seen "the conduct constituting the contempt," when an essential element of that conduct was a "vicious will" and a substantial issue had been raised as to Salvatore's capacity to possess one.

Moreover, the judge's certificate itself demonstrates how far he depended on things he neither saw nor heard. He places emphasis, as my brothers seem to do, on the testimony of the psychiatrists concerning Salvatore's ability to stand trial; the very fact that he found it necessary to rely on such evidence seems to show his belief that something beyond what he saw or heard appellant do was essential to conviction here.[1] The

---

1. Although I would reach the same conclusion if the facts were otherwise, it should be pointed out that the testimony of the psychiatrists was directed to an issue wholly different from that relevant to appellant's guilt, of contempt. The testimony of Dr. Hyslop on May 29, and of Dr. Arnett on his second appearance, also on May 29, that Salvatore was then able to understand the nature of the charges against him (although Dr. Arnett had not thought him so when testifying on May 25), does not negate a conclusion that the paranoid state which Dr. Arnett identified on May 25 may have caused the outbursts antedating May 29 or even the ones postdating it. Dr. Arnett conceded, in his May 29 testimony, that psychotic episodes might recur. Moreover, as is well known, in paranoia, "Falsification of reality is restricted to misinterpreting events; what happens is correctly perceived, but pe-

judge also relied on what he considered the faked character of appellant's suicide attempts, acts which Judge MacMahon neither saw nor heard and which were not committed in his presence. True, he saw the cuts on appellant's arms, but these were only circumstantial evidence as to the character of an act outside his presence, and I can find no satisfying distinction between his use of such evidence to support a conclusion as to a plan formulated by appellant with respect to action taken outside the court and the trial judge's use of conduct inside the courtroom as an evidentiary basis for inferring an agreement made outside it, which a majority of this Court, in United States v. Sacher, 182 F.2d 416, 455, 464 (2 Cir.1950), held an impermissible case for proceeding under F.R.Crim. Proc. 42(a).[2] Since the certificate thus rested in part on findings not permitted to be made pursuant to Rule 42(a), we would be obliged at least to remand on this score alone. However, for reasons previously stated, I am convinced that no valid conviction under Rule 42(a) can be made in this case.

Perhaps I should emphasize that, as in Offutt v. United States, 348 U.S. 11, 75 S.Ct. 11, 99 L.Ed. 11 (1954), the consequence of the view taken in this opinion is the not very calamitous one that appellant shall be prosecuted, not under Rule 42(a), but under Rule 42(b), which requires notice, hearing and in this case, unless he consents, the participation of another judge. On the facts here, where there is indeed much to suggest a deliberate attempt to thwart a verdict and consequent likelihood that a trial under Rule 42(b) will yield no different result, reversal to that end may seem a useless formalism, especially when, if we should affirm appellant's sentence on the narcotics charge on which he was tried and convicted, the 15 months' sentence for contempt, sandwiched between his existing New York and Florida sentences and his new Federal sentence, will have a minimal practical importance. But the protection here refused this not too attractive appellant may be of vital consequence to a worthier one on another day; procedural safeguards in the administration of criminal justice do not exist for the sole benefit of nice people.

I would reverse for appropriate action under Rule 42(b).[3]

culiar inferences are drawn from it. Except for the delusional system, the patient is perfectly oriented and perfectly normal in his conduct. The personality does not become disorganized, and interest in the environment is substantially preserved," White, The Abnormal Personality (1948), 524.

2. The record also contains other evidence as to appellant's suicide attempts; it is hard to believe the judge performed the feat of putting this out of his mind and relying only on what he saw and heard.

3. I have not dealt with a possible contention that Salvatore Panico offered nothing to show that he was under a paranoid psychosis on April 2 when, the Court having assigned counsel because the lawyer of Salvatore's choice was engaged in a New York criminal trial, Salvatore said, in the course of the impanelling of a jury, "Do these people know I don't have a lawyer? What is this, Russia? There is nobody representing me here." The sentences imposed by the judge on other defendants for incidents of a character similar to this make it plain that he would not have sentenced Salvatore to 15 months' imprisonment but for the much more serious incidents of May 23, 24 and 25. Although a remand could permit a sentence under Rule 42(a) limited to the April 2 incident, it would seem wiser that all the specifications be considered together under the Rule 42(b) procedure.