John ORMENTO, Petitioner,

v.

UNITED STATES of America, Respondent.

No. 70 Civ. 5614–LFM.

United States District Court, S. D. New York.

May 14, 1971.

import and distribute vast quantities of heroin in violation of the federal narcotics laws. He moves, by his retained attorney, William C. Erbecker of the Indiana bar, for post-conviction relief, pursuant to 28 U.S.C. § 2255, granting a hearing and vacating a judgment of conviction and the sentence imposed upon him on July 10, 1962. He also moves to disqualify the trial judge from considering this application for collateral relief on the ground that he "is of necessity a 'material witness' within the meaning of 28 U.S.C., Sec. 455, and also because of the bias and prejudice of the [trial judge]." We deny the motions.

We first consider the application for post-conviction relief.

The bulky petition is not a model of pleading. It is replete with quotations from cases, dissertations on legal principles, bald assertions, palpable misstatements and distortions of the record, immaterial, vague, frivolous and conclusory allegations, and rank speculation. We would be quite justified, therefore, in dismissing the petition out of hand. United States v. Malcolm, 432 F.2d 809, 812 (2d Cir. 1970). Instead, we have searched the maze of verbiage in an attempt to elicit petitioner's claims. That process reveals at once that petitioner seeks to raise and relitigate virtually every issue previously litigated unsuccessfully in this court, in the Court of Appeals, and in the Supreme Court on petition for *certiorari*. Petitioner also incorporates by reference an earlier petition for post-conviction relief, filed by co-defendants Carmine Panico and Carlie DiPietro. That petition was considered and rejected, but petitioner seeks to relitigate issue raised and decided against those petitioners. See Panico v. United States, 291 F.Supp. 728 (S.D.N.Y.1968), aff'd, 412 F.2d 1151 (2d Cir. 1969), cert. denied, 397 U.S. 921, 90 S.Ct. 901, 25 L. Ed.2d 102 (1970).

William C. Erbecker, Indianapolis, Ind., and Lawrence Waldman, New York City, for petitioner.

Whitney North Seymour, Jr., U. S. Atty. for the Southern District of New York, for respondent; John M. Walker, Jr., Asst. U. S. Atty., of counsel.

## OPINION

MacMAHON, District Judge.

Petitioner John Ormento was one of thirteen defendants convicted by a jury after a ten-week trial of conspiracy to

This application cannot be understood in the vacuum of generalities pleaded by petitioner but must be considered in the context of facts shown in the files and

records of the court.[1] It is, of course, impossible in the confines of this opinion to give more than the barest outline of the events in this ten-week trial which produced nearly 10,000 pages of transcript and over 5,000 exhibits. Petitioner was one of twenty-nine defendants accused of a vast international conspiracy to violate the federal narcotics laws. He was tried for the second time with twelve co-defendants, the other sixteen having been severed between trials. All but one of the remaining defendants were convicted after a ten-week trial.

The second trial, held in 1962, had been preceded a year earlier by a six-month trial disrupted with almost every conceivable type of obstruction and misconduct. The disorder and delay ended in a mistrial when the foreman of the jury broke his back in an unexplained fall down a flight of stairs in an abandoned building in the middle of the night and no alternate jurors were left to replace him.

The first trial, before Judge Levet, was so disrupted by frequent delays, sham illnesses, accidents and other misfortunes that Judge Levet was compelled to remand all the defendants to insure their continued presence. The Court of Appeals, after tallying an array of incidents, remarked that the "trial judge may well have detected a general pattern of conduct not attributable to less than all of the defendants."[2] United States v. Bentvena, 288 F.2d 442, 446 (2d Cir.), aff'd sub nom. Fernandez v. United States, 81 S.Ct. 642, 5 L.Ed.2d 683 (1961). Two of the defendants were held in contempt of court at the conclusion of the first trial, and the contempts were affirmed on appeal. United States v. Galante, 298 F.2d 72 (2d Cir. 1962).

Between trials, the defendants were enlarged on bail. Retrial of the case

---

1. The record has been scrutinized and summarized many times by numerous appellate judges. See United States v. Bentvena, 288 F.2d 442 (2d Cir.) (Chief Judge Lumbard, Judge Waterman and Judge Madden, United States Court of Claims, sitting by designation), aff'd sub nom. Fernandez v. United States, 81 S.Ct. 642, 5 L.Ed.2d 683 (1961); United States v. DiPietro, 302 F.2d 612 (2d Cir. 1962) (per curiam) (Judges Friendly, Smith and Marshall); United States v. Bentvena, 308 F.2d 47 (2d Cir. 1962) (Chief Judge Lumbard); United States v. Galante, 308 F.2d 63 (2d Cir. 1962) (Judge Kaufman); United States v. Panico, 308 F.2d 125 (2d Cir. 1962) (Judges Moore and Smith, Judge Friendly dissenting), vacated and remanded, 375 U.S. 29, 84 S.Ct. 19, 11 L.Ed.2d 1 (1963); United States v. Bentvena, 319 F.2d 916 (2d Cir.) (Judges Moore, Smith and Hays), cert. denied [Ormento v. United States, DiPietro v. United States, Fernandez v. United States, Panico v. United States, Galante v. United States, Laicano v. United States, Mancino v. United States, Sciremammano v. United States, Mirra v. United States], 375 U.S. 940, 84 S.Ct. 345, 346, 353, 354, 355, 360, 11 L.Ed.2d 271, 272 (1963); Mirra v. United States, 255 F.Supp. 570 (S.D.N.Y.1966), aff'd, 379 F.2d 782 (2d Cir.) (Chief Judge Lumbard, Judges Waterman and Smith),

cert. denied, 389 U.S. 1022, 88 S.Ct. 593, 19 L.Ed.2d 667 (1967); Panico v. United States, 291 F.Supp. 728 (S.D.N.Y.1968), aff'd, 412 F.2d 1151 (2d Cir. 1969) (Judges Waterman, Moore and Friendly), cert. denied, 397 U.S. 921, 90 S.Ct. 901, 25 L.Ed.2d 102 (1970).

2. Some glimpse of the parallel, outrageous and unprecedented conduct of the defendants in this case, designed to frustrate, delay, abort, or inject reversible error into, the trial may be gained by referring to some of the related cases in this and the appellate courts: United States v. Bentvena, *supra*, 288 F.2d 442; United States v. Galante, 298 F.2d 72 (2d Cir. 1962); Loicano v. MacMahon, Docket No. 27487, 2d Cir., Apr. 4, 1962; United States v. DiPietro, *supra*, 302 F.2d 612; United States v. Bentvena, 304 F.2d 883 (2d Cir.) (per curiam), cert. denied sub nom. Mirra v. United States, 371 U.S. 927, 83 S.Ct. 296, 9 L.Ed.2d 234 (1962); United States v. Bentvena, 308 F.2d 47 (2d Cir. 1962); United States v. Galante, *supra*, 308 F.2d 63; United States v. Panico, *supra*, 308 F.2d 125; United States v. Bentvena, *supra*, 319 F.2d 916; United States v. Mirra, 220 F.Supp. 361 (S.D.N.Y.1963); Mirra v. United States, *supra*, 255 F.Supp. 570; Sciremammano v. United States, Docket No. 67 Civ. 3546, S.D.N.Y., Dec. 6, 1967.

was adjourned on numerous occasions because a number of defendants claimed financial inability to retain counsel despite ability to post substantial bail. In July 1961, Judge Murphy found that the failure to retain counsel was part of a plan to postpone trial indefinitely, and he threatened contempt proceedings.

The case was assigned to us for trial in February 1962, but it was not ready because several defendants were still without counsel. It was not until March 9, 1962 that all remaining defendants had counsel either retained or appointed by the court. A pre-trial conference was held in March and the second trial was set peremptorily for April 2, 1962.

Nevertheless, on the appointed day, counsel for the defendant Loicano failed to appear claiming a recurrence of a chronic heart condition which had also plagued and delayed the first trial; another, counsel for the defendants Carmine and Salvatore Panico, although retained in September 1961, was engaged in another trial which was expected to last for one week; and still others withdrew at the last moment and there were numerous switches and substitutions of counsel. We denied applications for adjournment and assigned a lawyer, who had been through the first trial, to represent the Panicos and Loicano.

During the empanelling of the jury, Salvatore Panico made the first outburst. It was echoed a few minutes later by defendant Loicano. Two days later, on April 4, the court was forced to remand all of the defendants and this action was affirmed by the Court of Appeals, which noted that the incidents on which we had relied "might well seem to indicate a renewal of the 'misadventures' of the previous trial." United States v. DiPietro, 302 F.2d 612, 613 (2d Cir. 1962) (per curiam).

The problems were just beginning. Hardly a minute passed without a chorus of objections, motions for mistrial, severance, etc. We were swamped with applications for hearings and adjournments. A year later, Judge Moore observed on appeal that "[o]ne with a bent for statistics would find, no doubt, that if this trial were continued on every occasion that one or more of the defendants or their counsel so requested the trial would still be in progress." United States v. Bentvena, 319 F.2d 916, 936 (2d Cir.), cert. denied [Ormento v. United States, DiPietro v. United States, Fernandez v. United States, Panico v. United States, Galante v. United States, Loicano v. United States, Mancino v. United States, Sciremammano v. United States, Mirra v. United States], 375 U.S. 940, 84 S.Ct. 345, 346, 353, 354, 355, 360, 11 L.Ed.2d 271, 272 (1963).

Defendants resorted to every conceivable means to interrupt, delay and abort the trial, to inject or provoke reversible error, or to plant the seeds for post-conviction relief. Some defense counsel were repeatedly and inexcusably tardy. Defendants and certain defense counsel claimed numerous incapacitating illnesses and injuries which physical examinations failed to substantiate. Several defendants claimed inability to understand the proceedings and to consult with counsel due to aspirin-like medication administered by prison medical personnel. Five defendants claimed insanity and applied for psychiatric examination.

Verbal outbursts and obscenities were commonplace. On one occasion, this petitioner, Ormento, overpowered four marshals, forced his way from the courtroom and tried to break into the robing room screaming obscenities at the judge. On another, defendant Salvatore Panico climbed into the jury box, walked along the inside rail from one end of the box to the other, pushing jurors in the front row, and bellowing and screaming:

"Get out of here. The Judge has got me guilty. Big John, Joe B, they are the junk pushers. We're innocent. My brother and I, we haven't got anything to do with this thing. They have me in jail already. Do you understand me? They have us in jail for nothing. They got us in jail. Twenty years they want to give me.

\* \* \* \* \* \*

Twenty years, for nothing. Ruined for life. For what? Ruined for life. For what?" (Tr. 5638.)

His brother, not to be outdone, chimed in screaming obscenities at the court and prosecutor. On still another, defendant Mirra, echoing Salvatore Panico, shouted "they are all dope pushers" when asked on the stand if he knew certain co-defendants. The next morning, while under cross-examination, Mirra picked up the witness chair and hurled it at the Assistant United States Attorney. The chair missed the assistant but struck and shattered against the jury rail.

Referring to these and other misconduct, the Court of Appeals said:

"We have described only two of the more dramatic disturbances which plagued the trial of this case for we find it neither necessary nor judicious to publicize or preserve the vile language and rebellious conduct that characterized this trial. Suffice it to say that more abhorrent conduct in a federal court and before a federal judge would be difficult to conceive." United States v. Bentvena, *supra*, 319 F.2d at 930.

The courtroom antics were interspersed with off-stage acts by the defendants and certain of their counsel which always interrupted and delayed the trial. The actions of the court, now so righteously protested by petitioner, were forced and necessary responses to the unprecedented efforts of the defendants, including this petitioner, to thwart a fair, orderly and completed trial. In order to keep order, to prevent a frustration of justice and to complete the trial, we were compelled to station a large number of marshals in the courtroom, search spectators and gag and shackle both Panicos and Mirra during the latter part of the trial. Reviewing these measures, the Court of Appeals said:

"If any one distinct impression is gained from a scrutiny of the record here, it is that the trial judge was justified, indeed was forced, to resort to stern measures to obtain order in his courtroom." United States v. Bentvena, *supra*, 319 F.2d at 930–931.

The Court of Appeals, denying defendant Galante's application for bail, found that the defendants' misconduct demonstrated "a concerted effort to interfere with the judicial process." United States v. Galante, 308 F.2d 63, 64 (2d Cir. 1962). That conclusion has been shared by nine different appellate judges,[3] who, in one context or another, have scrutinized this record and reviewed the conduct of the defendants at either or both of their trials. Answering defendants' contention that they had been denied a fair trial by the unruly incidents and our measures to cope with them, the Court of Appeals observed:

"The judge did all in his power to minimize their effect, and we find no ground for reversal in the circumstances. Any other answer to these contentions would produce little less than anarchy.

\* \* \* \* \* \*

In view of the unprecedented tactics employed to impede the continuance and resolution of this trial, we find that the actions and rulings of the trial judge were reasonable and often necessary to prevent the frustration of justice." United States v. Bentvena, *supra*, 319 F.2d at 931–932.

We held eleven defendants, including petitioner, in contempt. Petitioner was only sentenced to ten days because we found mitigating circumstances in that he was suffering from a toothache at the time he attempted to break into the robing room. All contempt convictions, except Salvatore Panico's, were either dismissed as moot or affirmed on July 20, 1962. United States v. Bentvena, 304 F.2d 883 (2d Cir.) (per curiam), cert. denied sub nom. Mirra v. United States, 371 U.S. 927, 83 S.Ct. 296, 9 L.Ed.2d 234 (1962). Decision as to Salvatore Panico was reserved, however, until September 14, 1962, when his contempt con-

---

3. See Note 1, *supra.*

viction was affirmed, Judge Friendly dissenting. The Supreme Court, Mr. Justices Harlan and Clark dissenting, reversed Salvatore Panico's contempt conviction and remanded the matter for plenary hearing on the issue of his competence to form the requisite criminal intent. United States v. Panico, 308 F. 2d 125 (2d Cir. 1962), vacated and remanded, 375 U.S. 29, 84 S.Ct. 19, 11 L. Ed.2d 1 (1963).

With this review of the record, we turn to consideration of this petition.

We are mindful that:

"The statute requires 'a prompt hearing' when the allegations of deprivation of constitutional rights raise disputed issues of fact in order to 'determine the issues and make findings of fact and conclusions of law' with respect to them 'unless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief.' 28 U.S.C. § 2255; Sanders v. United States, *supra*, 373 U.S. 1 at 6, 15, 83 S.Ct. 1068 at 1077, 10 L.Ed.2d 148; Townsend v. Sain, 372 U.S. 293, 83 S.Ct. 745, 9 L.Ed.2d 770 (1963); Machibroda v. United States, *supra*, 368 U.S. 487 at 494, 82 S.Ct. 510, 7 L.Ed.2d 473; Note, Developments in the Law: Federal Habeas Corpus, 83 Harv.L.Rev. 1038 (1970). A hearing is not required, therefore, where the allegations are insufficient in law, undisputed, immaterial, vague, conclusory, palpably false or patently frivolous. Sanders v. United States, *supra*, 373 U.S. at 19, 83 S.Ct. 1068; Machibroda v. United States, *supra*, 368 U.S. at 494, 82 S.Ct. 510; Pennsylvania ex rel. Herman v. Claudy, 350 U.S. 116, 119, 76 S.Ct. 223, 100 L.Ed. 126 (1956)." United States v. Malcolm, *supra*, 432 F.2d at 812.

■ Nor is an evidentiary hearing required on nonconstitutional claims or even on constitutional claims where a trial or appellate court has determined the same claim adversely to the applicant on the merits and reaching the merits on the post-conviction application would not serve the ends of justice. Kapatos v. United States, 432 F.2d 110 (2d Cir. 1970); United States v. Granello, 403 F. 2d 337 (2d Cir. 1968), cert. denied, 393 U.S. 1095, 89 S.Ct. 878, 21 L.Ed.2d 785 (1969); Castellana v. United States, 378 F.2d 231 (2d Cir. 1967).

■ An evidentiary hearing is required as to constitutional claims (1) where a federal trial or appellate court said nothing in the earlier proceedings because the issue was not raised, (2) where it was unclear whether the court's "say" was on the merits, (3) where new law has been made or facts uncovered relating to the constitutional claim since the trial and appeal, and (4) where the trial or appellate court bases its rulings on findings of fact made after a hearing that was not full and fair. Kaufman v. United States, 394 U.S. 217, 227 n. 8, 89 S.Ct. 1068, 22 L.Ed.2d 227 (1969); Sanders v. United States, 373 U.S. 1, 83 S.Ct. 1068, 10 L.Ed.2d 148 (1963); Kapatos v. United States, *supra*.

With these principles in mind, we now consider petitioner's claims as best we can discern them.

## DENIAL OF ADEQUATE ASSISTANCE OF APPELLATE COUNSEL

■ Petitioner claims that he was denied adequate assistance of counsel on appeal because, while his appeal was pending, he was remanded to Leavenworth and allegedly unable to confer with appellate counsel.

Petitioner wholly fails to specify any item of prejudice resulting from his incarceration at Leavenworth. His conclusory allegation that his appellate attorney, who had not represented him at trial, could not possibly digest and comprehend the complex issues presented by the proceedings at trial, especially the damage to petitioner by the repeated misconduct of co-defendants and their counsel, simply does not square with the facts. The records on appeal brand this claim as palpably false and frivolous.

Petitioner was represented on appeal by Jacob Kossman, Esq., a noted appel-

late attorney, and as the brief submitted on petitioner's behalf demonstrates his assistance to petitioner was conscientiously thorough and of the highest caliber. He filed a lucid and lengthy brief and reply brief and raised every issue remotely pertaining to his client, including, by incorporation, all the issues raised by all the co-defendants. Indeed, the Court of Appeals took note of "the zeal and quality of the performance rendered by defense counsel at trial and before this Court." United States v. Bentvena, *supra*, 319 F.2d at 935.

The frivolity of this claim is conclusively demonstrated not only by the files and records of this case, but by the fact that this voluminous petition raises no issue of any substance that was not raised and disposed of on petitioner's direct appeal from his conviction.

Accordingly, we conclude that petitioner's claim of denial of his Sixth Amendment right to effective assistance of counsel on appeal is without merit.

## DENIAL OF FAIR TRIAL DUE TO CO-DEFENDANTS' PREJUDICIAL CONDUCT

■ Woven indiscriminately throughout the petition is the claim that petitioner was denied a fair trial because of the prejudicial conduct of his co-defendants and, particularly, the failure to sever co-defendant Salvatore Panico, allegedly a raging maniac. This tired old claim was raised repeatedly, fully explored and rejected upon the trial and on direct appeal, United States v. Bentvena, *supra*, 319 F.2d at 929, 932, and may not be relitigated here.

Petitioner seeks to relitigate this claim by proffering allegedly "new facts," incorporated from an earlier application of co-defendants Carmine Panico and Carlie DiPietro, to the effect that after his conviction Salvatore Panico was diagnosed a schizophrenic by a a psychiatrist at Sing Sing Prison and was committed to Dannemora State Hospital. Precisely this same claim was raised by the earlier petition of co-defendants and it was fully considered and rejected

both by this court and the Court of Appeals. Panico v. United States, *supra*, 291 F.Supp. 728, aff'd, 412 F.2d 1151. Referring to these "new facts," the Court of Appeals said:

"However, the diagnosis of schizophrenia was merely tentative and later determined to be incorrect. It was subsequently downgraded to psychopathic personality, depressed episode, and on September 17, 1963 Salvatore had recovered sufficiently to return to prison. While this evidence was not before the court at trial, it is only cumulative of the expert testimony and psychiatric reports which the trial judge had on two occasions during trial. It also cannot be really considered new because this information was submitted to this Court on direct appeal of the conviction, it was argued by both sides as fact and was considered by us in reaching our decision. See Judge Friendly's dissent on Salvatore's appeal from his contempt conviction nine months earlier. United States v. Panico, 308 F.2d 125, at 129. There is, therefore, no basis for claiming that this post-conviction psychiatric data is either new or that it would have warranted relitigation of the claim that Salvatore's presence and conduct at the trial prejudiced appellants' rights to a fair trial.

The second item of evidence, which appellants claim is 'new,' is an affidavit by a Dr. Jay Katz, a psychiatrist retained by appellants for the purpose of this application. Based primarily on a reading of various parts of the trial transcript, exhibits and reports from psychological tests conducted in late December 1966, and on three and one-half hours of psychiatric interviews with Salvatore, held in late December 1966 and early January 1967, Dr. Katz claims that Salvatore was 'helpless to control his conduct' during the 1962 trial. Appellant alleges that 'Dr. Katz' findings are significant because of their authoritative *restrospective* impact on the entire

medical picture of this record.' Appellants' Brief at page 67.

Aside from the serious problems in making an accurate retrospective diagnosis based on a reading of a cold record over four years after the relevant event, Dr. Katz's conclusions can in no meaningful way be characterized as new evidence. At best his report is cumulative expert testimony. Its probative value is also questionable in view of the fact that he relied on only three and one-half hours of interviews with Salvatore and on a reading of the record and reports compiled during trial. A psychiatrist who examined Salvatore three times during the 1962 trial, Dr. Hyslop, noted in his report that citing instances of Salvatore's behavior from the trial record was 'of little value in determining whether or not conduct was a product of mental disorder.'

We conclude then that neither the tentative diagnosis of the psychiatrist at Sing Sing Prison, nor Dr. Katz' subsequent 'retrospective' report warrants a full hearing on the issue of Salvatore's insanity during the 1962 trial. Neither can it be said that either is new evidence. It is also concluded that the identical issue raised here was previously litigated and determined adversely to the appellants." Panico v. United States, supra, 412 F.2d at 1155.

Thus, this claim has been decided adversely to petitioner on the merits and may not now be relitigated.

## NEW LAW HAS BEEN MADE SINCE PETITIONER'S TRIAL AND APPEAL RELATING TO HIS CLAIM OF DENIAL OF A FAIR TRIAL

██ Relying on Illinois v. Allen, 397 U.S. 337, 90 S.Ct. 1057, 25 L.Ed.2d 353 (1970), petitioner claims that new law since his trial requires that Salvatore Panico should have been expelled from the courtroom to protect petitioner's right to a fair trial. Allen does not teach new law. It simply reaffirms the ancient wisdom of the common law by holding that trial judges are given sufficient discretion to meet disruptive conduct with whatever constitutionally permissible measures, including total physical restraint, are necessary to save the trial under the circumstances of each case.[4] We, of course, labored without the guidance of Allen, but there is nothing in Allen which mandates removal of a disorderly defendant from the courtroom. Rather, the Supreme Court was careful to preserve broad discretion in the trial judge to choose the means best suited for coping with disorder.

"We believe trial judges confronted with disruptive, contumacious, stubbornly defiant defendants must be given sufficient discretion to meet the circumstances of each case. No one formula for maintaining the appropriate courtroom atmosphere will be best in all situations. We think there are at least three constitutionally permissible ways for a trial judge to handle an obstreperous defendant like Allen: (1) bind and gag him, thereby keeping him present; (2) cite him for contempt; (3) take him out of the courtroom until he promises to conduct himself

4. Snyder v. Massachusetts, 291 U.S. 97, 54 S.Ct. 330, 78 L.Ed. 674 (1934); Diaz v. United States, 223 U.S. 442, 32 S.Ct. 250, 56 L.Ed. 500 (1912); Odell v. Hudspeth, 189 F.2d 300 (10th Cir. 1951); Scruggs v. State, 131 Ark. 320, 198 S.W. 694 (1917); People v. Loomis, 27 Cal. App.2d 236, 80 P.2d 1012 (1938); People v. Harris, 302 Ill. 590, 135 N.E. 75 (1922); State v. Temple, 194 Mo. 237, 92 S.W. 869 (1906); People v. Mendola, 2 N.Y.2d 270, 159 N.Y.S.2d 473, 140 N.E. 2d 353 (1957); Pierpont v. State, 49 Ohio App. 77, 195 N.E. 264 (1934); Regina v. Berry, 104 L.T.J. 110 (Northhampton Assizes 1897); Stephens, Digest of Criminal Procedure (1883), p. 194; Note, "The Escalation of Trial Disruption: Antagonism, Violence and Pandemonium in the Courts," 4 Suffolk U.L. Rev. 760 (1969).

properly." Illinois v. Allen, *supra,* 397 U.S. at 343–344, 90 S.Ct. at 1061.

Exercising our discretion and mindful of the Sixth Amendment, we indulged every reasonable presumption against the loss of Panico's constitutional rights to be confronted with the witnesses against him, Johnson v. Zerbst, 304 U.S. 458, 464, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938), and applied the first of the permissible ways for handling the disturbance. Panico was shackled to restrain his movements, but he was not gagged. Rather, his outbursts were muffled with an inoffensive surgical mask which permitted him to communicate with counsel.

The supporting affidavits fail to note that most of Panico's misconduct occurred in the absence of the jury. We have detailed Panico's misconduct in an earlier opinion to which we refer for a complete and accurate narrative of the facts in their true context. Panico v. United States, *supra,* 291 F.Supp. at 734 et seq. In our effort to avoid any prejudice to any defendant, including the perpetrators, the jury was repeatedly admonished after each incident to ignore it. The court's charge to the jury emphasized its duty in no uncertain terms:

"As I have repeatedly instructed you throughout this trial, misconduct and outbursts, disturbances and remarks by any defendant on such occasions are not evidence and are not to be considered by you in determining the guilt or innocence of such defendant or any other defendant in this case. Nor are you to draw any inference against any defendant or be influenced in any way by any measures which the court has taken to insure the orderly conduct of this trial. Such matters are not evidence, and you must put them entirely out of your mind. The orderly conduct of the trial and the measures necessary to insure it are the exclusive responsibility of the Court. They are no part of your function. You are, therefore, to draw no inference against any defendant from the Court's actions in that regard.

\* \* \* \* \* \*

What the law requires, then is calm, cool and deliberate consideration of the evidence. The law does not permit you to be governed by guesswork, passion, fear, favor, prejudice, public opinion, the nature of the charge, the remarks, outburst or conduct of any defendant during the trial, or by anything other than a fair and impartial consideration of the evidence." (Tr. 8714–17.)

Finally, the issue of the prejudicial effect of co-defendants' conduct and the constitutionality of the means employed by the court to cope with it was raised, considered and determined adversely to petitioner on direct appeal, United States v. Bentvena, *supra,* 319 F.2d at 929–933, and there is nothing in *Allen* which requires relitigation of those issues here.

## TRIAL JUDGE'S PREJUDICIAL CONDUCT

Petitioner claims, without specification, that he was deprived of a fair trial by the prejudicial conduct of the trial judge.

▆ The moving affidavit is an empty dissertation on the duty of a trial judge to maintain a fair and impartial attitude, but fails to cite a single instance of any prejudicial remark or conduct of the trial judge toward this petitioner. Rather, we are referred to his affidavit on the companion motion to disqualify the trial judge for bias and prejudice. That affidavit also fails to cite a single instance of personal bias or prejudice towards petitioner. Rather, it relies on our remand of all of the defendants and Panico's sally into the jury box. This is patently an insufficient showing of bias or prejudice.

Here, again, the alleged prejudicial conduct of the trial judge was raised, thoroughly scrutinized and completely rejected on direct appeal. There the Court of Appeals said:

"We have described sufficiently the outrageous conduct of the defendants

at this trial. We find that the trial judge, notwithstanding this harassment, maintained an impartial attitude and did all in his power to safeguard the rights of the defendants and to minimize the effects of these outbursts. After the incident in question, as after all similar disturbances, the judge instructed the jury to ignore it. We find no ground for reversal here." United States v. Bentvena, *supra,* 319 F.2d at 933.

The conduct of the trial judge has also been challenged, thoroughly reviewed and upheld in other applications for post-conviction relief by co-defendants. Panico v. United States, *supra,* 412 F.2d 1151, cert. denied, 397 U.S. 921, 90 S.Ct. 901, 25 L.Ed.2d 102; Mirra v. United States, 255 F.Supp. 570 (S.D.N.Y. 1966), aff'd, 379 F.2d 782 (2d Cir.), cert. denied, 389 U.S. 1022, 88 S.Ct. 593, 19 L.Ed.2d 667 (1967). This old claim, therefore, may not be relitigated here.

## INVALIDITY OF THE INDICTMENT

 Petitioner claims that the indictment is invalid. The indictment charged an offense and is thus not subject to collateral attack under § 2255, except for lack of jurisdiction or infringement of constitutional rights. United States v. Spada, 331 F.2d 995 (2d Cir.), cert. denied, 379 U.S. 865, 85 S.Ct. 130, 13 L.Ed.2d 67 (1964).

Petitioner's claim of a denial of constitutional rights is predicated on an equivocal assertion, first, that there was no evidence and, second, that there was no credible evidence before the grand jury concerning Ormento.

There can be no question that there was evidence before the grand jury concerning Ormento, for the government's principal witness, Smith, testified before that body concerning Ormento's participation in the conspiracy. There was, thus, competent evidence before the grand jury and that more than satisfies the requirement of the Fifth Amendment. Costello v. United States, 350 U.S. 359, 363, 76 S.Ct. 406, 100 L.Ed. 397 (1956).

 However, Smith's grand jury testimony did omit to mention two out of three incidents involving Ormento about which Smith testified at trial. A witness's omission to testify before the grand jury about two incidents to which he testifies at trial bears on his credibility, but it does not raise an issue of constitutional dimension and is not subject to collateral attack under § 2255. *Cf.* Costello v. United States, *supra,* 350 U.S. at 363, 76 S.Ct. 406; Paroutian v. United States, 395 F.2d 673, 675 (2d Cir. 1968), cert. denied, 393 U.S. 1058, 89 S.Ct. 700, 21 L.Ed.2d 700 (1969).

Finally, the omissions were exploited in summation and brought to the attention of the court on direct appeal. Brief of Appellant John Ormento, p. 12.

This claim is, thus, without merit.

## THE SENTENCING PROVISIONS OF 21 U.S.C. § 174 ARE UNCONSTITUTIONAL

Petitioner claims that the sentencing provisions of 21 U.S.C. § 174 are unconstitutional because they permit cruel and unusual punishment.

The challenged conviction was petitioner's sixth for violation of the federal narcotics laws, spanning a period of twenty-five years. The evidence established that he was a kingpin in a huge international conspiracy to traffic in vast quantities of narcotics for a substantial period of time. The record of the sentencing hearing shows that there were absolutely no mitigating circumstances. Petitioner carefully avoided the personal use of drugs while preying on the community and profiting from the enslavement of others to drug addiction. His criminal record and the evidence upon the trial showed that he was a hardened criminal, dangerous to the community, totally incapable of rehabilitation, and wholly undeserving of leniency. The forty-year sentence imposed was within the legal maximum.

 It is well settled that a sentence imposed within the limits of a statute cannot amount to cruel and un-

usual punishment. United States v. Dawson, 400 F.2d 194, 200 (2d Cir. 1968), cert. denied, 393 U.S. 1023, 89 S.Ct. 632, 21 L.Ed.2d 567 (1969). Nor is it subject to collateral attack on the ground of severity, nor because other defendants received lesser sentences. Hill v. United States, 368 U.S. 424, 430, 82 S.Ct. 468, 7 L.Ed.2d 417 (1962); United States v. Malcolm, *supra*, 432 F.2d at 814; Marcella v. United States, 344 F.2d 876 (9th Cir. 1965), cert. denied, 382 U.S. 1016, 86 S.Ct. 630, 15 L.Ed.2d 531 (1966); Randall v. United States, 324 F.2d 726 (10th Cir. 1963). See United States v. Lewis, 392 F.2d 440 (4th Cir. 1968).

Accordingly, this claim is also without merit.

## CONSPIRACY STATUTE GENERALLY AND 21 U.S.C. § 174 ARE UNCONSTITUTIONAL

█ Petitioner also claims that the conspiracy statute generally and 21 U.S.C. § 174 (narcotics conspiracy statute), as applied here, are unconstitutional. This theme is scattered indiscriminately throughout this petition.

The short answer to this claim is that the constitutionality of federal conspiracy statutes has been consistently upheld since their first enactment. Clune v. United States, 159 U.S. 590, 595, 16 S.Ct. 125, 40 L.Ed. 269 (1895); Callan v. Wilson, 127 U.S. 540, 555–556, 8 S.Ct. 1301, 32 L.Ed. 223 (1888). See Dennis v. United States, 341 U.S. 494, 511, 71 S.Ct. 857, 95 L.Ed. 1137 (1951); Pinkerton v. United States, 328 U.S. 640, 643, 66 S.Ct. 1180, 90 L.Ed. 1489 (1946).

Thus, there is no merit to this claim.

## CHARGE TO THE JURY

Petitioner claims error in the court's charge to the jury. Relying on United States v. Massiah, 307 F.2d 62 (2d Cir. 1962), rev'd, 377 U.S. 201, 84 S.Ct. 1199, 12 L.Ed.2d 246 (1964), he contends that the court failed to instruct the jury that knowledge of illegal importation was a necessary element of the conspiracy under 21 U.S.C. § 174.

█ This claim was squarely raised, considered and rejected on direct appeal, and the court expressly approved the charge. United States v. Bentvena, *supra*, 319 F.2d at 938–940. Moreover, the charge of the trial court is not reviewable by way of a collateral challenge under § 2255. United States v. Comulada, 155 F.Supp. 266 (S.D.N.Y. 1957).

Accordingly, this claim is also without merit.

## REFUSAL TO ALLOW SALVATORE PANICO TO TESTIFY

█ Petitioner claims that the court committed prejudicial error by refusing to allow Salvatore Panico to testify in his own behalf.

Toward the end of the trial, after a brief recess, just as we were entering the courtroom, Salvatore Panico stepped into the jury box, walked along the inside rail and screamed, among other things, that:

"Big John, Joe B, they are the junk pushers." (Tr. 5638.)

Later, during the course of a disruption by Mirra, Salvatore Panico made a similar accusation against all the defendants. A few days later, he made a like accusation against DiPietro. After full psychiatric examinations and hearings, we found Salvatore Panico sane and competent to stand trial and warned him that other outbursts would force us to have him gagged and shackled. Nevertheless, a few days later, he disrupted the proceedings again with an identical accusation, directed this time, at defendant Galante. Panico was immediately removed from the courtroom and bound and gagged and remained that way for the remainder of the trial.

There were no other incidents in the presence of the jury, although he continued in off-stage efforts to disrupt the trial, and when the surgical mask was removed, in the absence of the jury, continued to make prejudicial remarks.

At that point in the trial, the Court of Appeals mandated another psychiatric examination of Panico. Accordingly, he was examined forthwith by a qualified psychiatrist but refused to cooperate. Nevertheless, about a week later, the psychiatrist filed a report that Panico was competent and sane in all respects, and based upon that report, earlier psychiatric hearings and our own observations, we found him competent to stand trial and sane in all respects.

While the mandated psychiatric report was pending, however, Panico's lawyers informed us that although they were unable to communicate with him, he wished to take the stand against their advice. Counsel for petitioner and other defense counsel objected, at first unsuccessfully, that Panico would only make prejudicial and conclusory accusations from the stand which would result in deprivation of his co-defendants' right to a fair trial. The court conferred with Panico and his brother at considerable length. Panico refused to promise to behave on the witness stand, or even to respond to our request. Rather, he kept shouting that he was going to tell the truth and that he knew "plenty."

It was perfectly obvious to us then, and still is, that Panico planned to use the witness stand not to testify, but to shout conclusory and prejudicial accusations against co-defendants and set the stage for a mistrial, reversible error or later post-conviction relief. Mindful of our duty to protect the rights of all defendants and employing a lesser means for safeguarding the rights of co-defendants than the total expulsion sanctioned eight years later in Illinois v. Allen, *supra*, we held that he had waived his privilege to take the stand by his outrageous misconduct and precluded him from testifying. Our ruling won a reversal for Panico in the Court of Appeals which, while agreeing that more abhorrent conduct "would be difficult to conceive" and not wishing "to indicate that the privilege may never be waived by conduct," nevertheless held that "the facts in the present case do not warrant that conclusion." United States v. Bentvena, *supra*, 319 F.2d at 943–944.

Petitioner argues that Panico's exclusion from the witness stand deprived petitioner of an opportunity to confront him with his accusations on cross-examination. The exact claim was raised and rejected on direct appeal. Reply Brief of Appellant John Ormento, p. 3; United States v. Bentvena, *supra*, 319 F.2d at 944.

Moreover, since under *Allen* it would have been constitutionally permissible to base a waiver of the right to be present on the misconduct shown here and to have excluded Panico from the courtroom altogether, we think, with all respect to the Court of Appeals, that it was constitutionally permissible *a fortiori*, to find a waiver of the privilege to testify and to exclude him from the witness stand.

In any event, we fail to see how Panico's exclusion following his outburst was required. After the incident had occurred, his expulsion would not have protected the remaining defendants from any possible prejudice greater than the safeguard achieved by his total physical restraint. If all of the defendants, including this petitioner, had been expelled from the courtroom following their first misconduct, it would have been impossible to try the case, and surely *Allen* does not mandate such an absurd result.

Thus, there is no merit to this claim.

## INSUFFICIENCY OF THE EVIDENCE

Petitioner claims, in one form or another, that the evidence against him was insufficient and attacks the credibility of the government's principal witness, Smith. Again, the alleged insufficiency of the evidence was raised, considered and rejected on direct appeal, and the Court of Appeals found the evidence sufficient. United States v. Bentvena, *supra*, 319 F.2d at 927.

The credibility of witnesses is obviously a question for the jury, not for the court on a § 2255 petition.

United States v. Rosenberg, 200 F.2d 666 (2d Cir. 1952), cert. denied, 345 U.S. 965, 73 S.Ct. 949, 97 L.Ed. 1384 (1953); Dansby v. United States, 291 F.Supp. 790 (S.D.N.Y.1968). Likewise, the court has no authority in a § 2255 proceeding to vacate a conviction based on insufficient evidence. Dansby v. United States, *supra*, 291 F.Supp. at 793 and cases there cited.

Accordingly, this claim is also without merit.

### ADMISSION OF ILLEGALLY SEIZED EVIDENCE

■ Petitioner claims that certain evidence admitted against him at trial was obtained by illegal seizure. This issue was raised at trial, and we ruled that defendants lacked standing, since they had no interest either in the premises searched or the property seized. Several co-defendants raised the point on direct appeal, and, although not expressly raised by petitioner, his brief on appeal incorporated by reference "the Arguments, to Extent Relevant, of Each of the Other Appellants in This Cause Without Repeating Them in This Brief." Brief of Appellant John Ormento, p. 31.

The Court of Appeals carefully recited the facts relating to the challenged seizures and necessarily affirmed the trial court's ruling without specifically giving an opinion on the issue. United States v. Bentvena, *supra*, 319 F.2d at 924–925.

Clearly, therefore, petitioner has had a full and fair hearing on this issue, and both the trial and appellate courts have had their "say." Moreover, there is no new law on the subject. Nor has the petitioner asserted new facts.

This claim, therefore, is also without merit.

### VENUE

■ Petitioner claims that he was tried in the wrong district. This claim is both frivolous and untimely, because it was not raised prior to this petition and was therefore waived. Gourneau v. United States, 390 F.2d 320 (8th Cir. 1968).

Accordingly, this claim is also without merit.

### MARSHAL ESCORTED JUROR NO. 10

■ Finally, petitioner claims that juror No. 10 was provided with a marshal escort during the trial, but fails to allege that juror No. 10 was prejudiced either generally or specifically. This allegation is patently insufficient.

### MOTION TO DISQUALIFY

This brings us to the motion to disqualify the trial judge from considering this § 2255 petition. Petitioner first grounds this application on an allegation that the trial judge "is going to be a material witness."

Title 28, United States Code, Section 455 provides, in pertinent part:

"Any justice or judge of the United States shall disqualify himself in any case in which he * * * is or has been a material witness * * *."

■ Assertedly, the trial judge is to testify concerning his observations respecting Salvatore Panico's mental competency upon the trial. Manifestly, the trial judge knows what he saw and heard in the courtroom, but such knowledge does not disqualify the trial judge as a material witness. The same point was raised, thoroughly considered and rejected both by this court and by the Court of Appeals in Panico v. United States, *supra*, 291 F.Supp. at 745, aff'd, 412 F.2d at 1155.

One of the congressional purposes in enacting § 2255 was to make use of the trial judge's intimate knowledge of the facts and circumstances of the case. The statutory requirement that the motion must be filed with the sentencing court was designed to relieve other judges from the burden of learning the case from a cold and often voluminous record and to correct the unseemly practice under habeas corpus of pitting the credibility of a United States District Judge against that of a convicted criminal. That pur-

pose would be wholly frustrated if the trial judge were disqualified as a material witness solely because he knows what happened in his courtroom during the trial which resulted in the challenged conviction. In any event, since no hearing is necessary on petitioner's § 2255 application, there will be no witnesses in this proceeding.

We conclude, therefore, that we are not disqualified as a material witness.[5] Panico v. United States, *supra*, 291 F. Supp. 728; Mirra v. United States, *supra*, 255 F.Supp. at 582–583, aff'd, 379 F.2d at 788.

The second ground urged by petitioner as a basis for disqualification is that the trial judge has a personal bias and prejudice against petitioner.

Title 28, United States Code, Section 144 provides, in pertinent part:

"Whenever a party to any proceeding in a district court makes and files a timely and sufficient affidavit that the judge before whom the matter is pending has a personal bias or prejudice either against him or in favor of any adverse party, such judge shall proceed no further therein, but another judge shall be assigned to hear such proceeding.

The affidavit shall state the facts and the reasons for the belief that bias or prejudice exists * * *. A party may file only one such affidavit in any case. It shall be accompanied by a certificate of counsel of record stating that it is made in good faith."

Petitioner utterly fails to state any facts showing that personal bias or prejudice exists on the part of the trial judge. Rather, he reiterates all his complaints about the occurrences and conduct of the trial and the trial judge's rulings with respect to them. This showing is patently insufficient to establish personal bias or prejudice. Mirra v. United States, *supra*, 255 F.Supp. at 583.

"Any opinions formed for or against a party by reason of the evidence and observed conduct before a judge in a judicial proceeding, and the judge's expressions of such opinions, however vigorous, are not the personal 'bias and prejudice' required to disqualify a judge under the statute. Foster v. Medina, 170 F.2d 632 (2d Cir. 1948), cert. denied 335 U.S. 909, 69 S.Ct. 412, 93 L.Ed. 442 (1949).

And the fact that personal observations by the judge on trial necessarily enter into his rulings is not cause for disqualification. Indeed, one of the purposes of § 2255 was to make use of such knowledge of the trial occurrences in passing on attacks on convictions because of such occurrences. United States v. Smith, 337 F.2d 49, 53, (4th Cir. 1964), cert. denied 381 U.S. 916, 85 S.Ct. 1542, 14 L.Ed.2d 436 (1965).

We find no error in the refusal of Judge MacMahon to disqualify himself from hearing the § 2255 motion. There is no showing of any personal animus of the judge toward this litigant." Mirra v. United States, *supra*, 379 F.2d at 787–788.

Moreover, the same charge was leveled against the trial judge by this petitioner and his co-defendants on direct appeal and, after exhaustive scrutiny of the record, was totally rejected by the Court of Appeals. See United States v. Bentvena, *supra*, 319 F.2d at 932–933.

Finally, 28 U.S.C. § 144, among other things, requires that an affidavit of bias and prejudice "shall be accompanied by a certificate of counsel of record stating that it is made in good faith."

Counsel of record for petitioner upon the trial of this case was Herbert S. Siegal, Esq., and his appellate counsel was Jacob Kossman, Esq. Neither has joined in the certificate of good faith on behalf of petitioner. Rather, William C. Erbecker, Esq., an attorney of

5. We earlier dismissed interrogatories propounded by petitioner because no hearing is necessary. Harris v. Nelson, 394 U.S.

286, 89 S.Ct. 1082, 22 L.Ed.2d 281 (1969).

 

Indianapolis, Indiana, has filed the certificate of good faith. Co-counsel, Lawrence Waldman, Esq., is a member of the bar of this court, but he does not join in the certificate; nor was he counsel of record for petitioner upon the trial or upon the appeal.

This is a significant defect in the motion to disqualify. It is obvious that such counsel are in no position to make a meaningful certificate of good faith. Nor are they as likely to use the care and restraint in certifying good faith as would otherwise be the case were their employment not directly related to the filing of the certificate.

"Counsel of record," as used in the statute, means an attorney at law admitted to the bar of this court. This requirement of the statute is for the purpose of assuring the court that the affidavit is made in good faith through the certificate to that effect made by one who is a sworn officer of the court and regularly admitted as an attorney to practice at the bar of the court. The requirement is not technical. It is one of the essential requirements of the statute. It is founded on the assumption that a member of the bar of the court will not indulge in reckless disregard of the truth and attest to the good faith and belief of affiant without basis in fact. Counsel of record has an obligation to the court, as well as to his client, and a public duty to aid the administration of justice to uphold the dignity of the court and respect its authority. United States v. Onan, 190 F.2d 1, 6 (8th Cir. 1951); Mitchell v. United States, 126 F.2d 550, 552 (10th Cir. 1942); Beland v. United States, 117 F.2d 958, 960 (5th Cir. 1941); Currin v. Nourse, 74 F.2d 273, 275 (8th Cir. 1934); United States v. Hoffa, 245 F.Supp. 772 (E.D.Tenn.1965); Freed v. Inland Empire Ins. Co., 174 F.Supp. 458 (D. Utah 1959); United States v. Garden Homes, Inc., 113 F.Supp. 415, 418 (D.N.H.1953), aff'd, 210 F.2d 281 (1st Cir. 1954).

The affidavit of bias and prejudice submitted here is wholly without even an alleged factual basis. We have never held any bias or prejudice, nor acted as a result of any bias or prejudice, against the petitioner Ormento, nor against any defendant in this case. Nor have we held any bias or prejudice, nor acted as a result of any bias or prejudice, in favor of the prosecution. Each and every action of the court is a matter of record in the case and was taken solely on the basis of the evidence and incidents happening during the trial and in accordance with the law, regardless of the party or parties affected. That record has been carefully scrutinized on numerous occasions by the United States Court of Appeals for this circuit and has been found to be free from prejudicial conduct on our part.

Accordingly, petitioner's motions to vacate the judgment of conviction and the sentence heretofore imposed upon him on July 10, 1962, for a hearing, and to disqualify this court from considering this application for post-conviction relief are in all respects denied.

So ordered.